## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| CARL NELSON and KHARI PORTER, individually and on behalf of all others similarly situated<br><br>*Plaintiffs,*<br><br>v.<br><br>AREA WIDE PROTECTIVE, INC.; and W.E.K. ENTERPRISES, LLC, formerly known as ROADTEK TRAFFIC SOLUTIONS LLC,<br><br>*Defendants.* | Case No.: |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Carl Nelson and Khari Porter ("Named Plaintiffs"), individually and on behalf of others similarly situated (collectively "Plaintiffs"), by and through their undersigned counsel of record, hereby set forth this collective and class action against Defendants Area Wide Protective, Inc.; and W.E.K. Enterprises, LLC, formerly known as RoadTek Traffic Solutions LLC (collectively "Defendants"), and allege as follows:

### NATURE OF ACTION AND INTRODUCTORY STATEMENT

1.     This action arises out of Defendants' systemic, company-wide policy of failing to pay its Crew Chiefs and Flaggers for all hours worked and for overtime hours worked at the appropriate overtime rate, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Virginia Minimum Wage Act ("VMWA"), Virginia Code §§ 40.1-28.8 *et seq.*; and the Virginia Wage Payment Act ("VWPA"), Virginia Code §§ 40.1-29 *et seq.*

2.     Plaintiffs consist of current and former Crew Chiefs and Flaggers, or similar positions, who work for Defendants in Virginia and are compensated on an hourly basis. Throughout the relevant period, Defendants have maintained a corporate policy of failing to compensate Plaintiffs for all mandatory travel time, pre-shift work, post-shift work, and/or automatically deducted thirty (30) minute lunch breaks which Plaintiffs often work through.  In particular, Defendants require Plaintiffs to arrive to work at approximately 5:30am, prior to the scheduled start time of Plaintiffs' first job, in order to perform a litany of tasks necessary to perform Plaintiffs' jobs, including preparing equipment, loading work trucks with equipment and water, turn in the previous day's paperwork, inspect all vehicles and equipment, fuel vehicles, among other tasks.  As for the end of Plaintiffs' shift, Plaintiffs are required to pick up cones, clean up road flares, pick up signage, travel back to Defendants' shop, unload equipment from the work trucks, inspect equipment and vehicles for damage, and numerous other tasks to properly wind down Plaintiffs' shifts. Plaintiffs are required to perform this work in order to be prepared to carry out their job responsibilities when they arrive at job sites and to properly protect Defendants' equipment and vehicles at the end of the workday.  This work was required to be completed by Defendants and the failure of Plaintiffs to perform this work could result in warnings, discipline, and ultimately, termination.

3.     Defendants, through their managers, are aware that Plaintiffs are completing this pre and/or post-shift work and doing so without compensation.  Defendants suffer or permit, and in fact require Plaintiffs to complete such pre- and/or post-shift work.

4.     Additionally, Defendants do not compensate Flaggers for the travel time required to get to the first job site, nor for the travel time required to go back to Defendants' shop at the end of Plaintiffs' workday. In fact, Plaintiffs only receive compensation from the time they arrive at

the first job site to the time they leave the last jobsite; and only Crew Chiefs are compensated for travel time at minimum wage, not their regular rate. Furthermore, Defendants automatically deduct thirty (30) minutes from Plaintiffs' time each day for lunch breaks, despite Defendants, through their managers, being aware that Plaintiffs frequently work through their lunch breaks. While Defendants are aware that Plaintiffs are often not able to take their lunch breaks, Defendants do not adjust Plaintiffs' time to remove the automatically deducted lunch breaks when Plaintiffs are not able to take the breaks.

5.     Plaintiffs routinely work 40 hours or more per week, without accounting for pre- and/or post-shift work, travel time, and automatically deducted lunch breaks.  When pre- and/or post-shift work, travel time, and automatically deducted lunch breaks are included, even those Plaintiffs who are scheduled and paid for only 40 hours or less per week, actually work over 40 hours per week without being compensated for all of their time worked or compensated at the proper overtime rate for hours worked over 40 per week.

6.     Throughout the relevant period, Defendants have also maintained a corporate policy of underpaying and failing to lawfully compensate Plaintiffs at the appropriate overtime rates, as is frequently evidenced by Plaintiffs' earnings statements, which demonstrate that Plaintiffs are not even paid properly for undercounted overtime hours that Defendants list on Plaintiffs' earnings statements. Such overtime hours are undercounted because of the aforementioned pre- and/or post-shift work, travel time, and automatically deducted lunch breaks, which Defendants do not compensate Plaintiffs for, and which are not accounted for on Plaintiffs' earnings statements. Additionally, in early 2021, Defendant began to include a line item on one of Plaintiffs' earnings statements for "retro pay." Incredibly, even though Defendants have included this line item on Plaintiffs' earnings statement, Plaintiffs have not actually been paid any of the

"retro pay" listed. Moreover, Defendants have not provided Plaintiffs with any explanation for what this "retro pay" is or why Defendants listed it on Plaintiffs' earnings statements, nor with any explanation for why Plaintiffs have not received this pay. However, regardless of the reason Defendants' listed this line item on Plaintiffs' earnings statement, the amount of any such promised "retro pay" does not come close to compensating Plaintiffs for the damages they have suffered resulting from Defendants' failing to compensate Plaintiffs for all unpaid pre- and/or post-shift work, travel time, automatically deducted lunch breaks, and overtime hours worked.

7.      Defendant's practice of failing to compensate Plaintiffs for all pre and post-shift work, travel time, and automatically deducted lunch breaks violates Plaintiffs' rights under the FLSA, VMWA, and VWPA.

8.      Plaintiffs bring this action for violation of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following class in Virginia:

> All individuals who were, are, or will be employed by Defendants in Virginia as Flaggers, Crew Chiefs, or other similar positions who were not compensated for all of their hours worked, including, but not limited to, above forty (40) per week, and/or who were not paid overtime compensation at the proper overtime rate, within three (3) years prior to the commencement of this action, through the date of judgment or final disposition in this action.

9.      Defendants are liable for their failure to pay Plaintiffs for all work performed.

10.     Plaintiffs who elect to participate in this FLSA collective action seek compensation for all pre and/or post-shift work performed for Defendants, travel time performed for Defendants, and for automatically deducted lunch breaks not taken by Plaintiffs. Plaintiffs seek compensation at the appropriate overtime rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

11.    Named Plaintiffs also bring this action, on their own behalf, and as representatives of similarly situated current, former or future Flaggers, Crew Chiefs, or similar positions, employed by Defendants in Virginia, under the VMWA and VWPA.  Named Plaintiffs, who are Virginia residents and who work for Defendants in Virginia, assert that they and the putative class, who work or worked in Virginia for Defendants, are entitled to compensation for all pre- and/or post-shift work performed for Defendant, travel time performed for Defendant, and/or automatically deducted lunch breaks not taken by Plaintiffs, whether the work week totaled greater or fewer than forty (40) hours, compensation at the appropriate overtime rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to Virginia Code §§ 40.1-28.8, *et seq.,* and 40.1-29 *et seq.*

12.    Plaintiffs seek class certification under Rule 23 of the Federal Rules of Civil Procedure for the following class of Defendants' employees in Virginia:

> All individuals who were, are, or will be employed by Defendants in Virginia as Flaggers, Crew Chiefs, or other similar positions who were not compensated for all of their hours worked, including, but not limited to, above forty (40) per week, and/or who were not paid overtime compensation at the proper overtime rate, within three (3) years prior to the commencement of this action, through the date of judgment or final disposition in this action.

13.    Plaintiffs bring this lawsuit seeking monetary relief against Defendants on behalf of themselves and all others similarly situated in Virginia to recover, among other things, unpaid wages and benefits, interest, attorneys' fees, costs, expenses and penalties pursuant to Virginia Code §§ 40.1-28.8 *et seq.*, 40.1-29 *et seq.*, and 29 U.S.C. §§ 201, *et. seq.*

## JURISDICTION AND VENUE

14.    Plaintiffs bring this collective and class action against Defendants for violations of Virginia Code §§ 40.1-28.8 *et seq.*, 40.1-29 *et seq.*, and 29 U.S.C. §§ 201, *et. seq.*

15.     This Court has original subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1331 and 29 U.S.C. § 216(b).

16.     Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the pendent state law claims under the VMWA and VWPA because those state law claims arise out of the same nucleus of operative fact as the FLSA claims.

17.     This Court has jurisdiction over all Defendants because, upon information and belief, they are citizens of the United States, have sufficient minimum contacts in Virginia or otherwise intentionally avail themselves of the Virginia market so as to render the exercise of jurisdiction over them by the Federal and Virginia courts consistent with traditional notions of fair play and substantial justice.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants conduct business within the Eastern District of Virginia, and a substantial part of the events or omissions giving rise to these claims occurred in this District.

## COVERAGE

19.     At all relevant times, Defendants were employers within the meaning of the FLSA, 29 U.S.C. § 203(d), the VMWA, and the VWPA.

20.     At all relevant times, Plaintiffs and all others similarly situated were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206, 207.

21.     At all times material to this action, Defendants were an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials

that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000

## PARTIES

22.     Named Plaintiff Nelson is a resident of Maryland and Named Plaintiff Porter is a resident of Virginia. Both Named Plaintiffs worked for Defendants in Virginia during the relevant time period.

23.     Named Plaintiffs are informed, believe, and allege, that Defendants, at all times hereinafter mentioned, were and are employers as defined in and subject to the FLSA and Virginia Code §§ 40.1-28.9, whose employees were and are engaged throughout this district and the Commonwealth of Virginia.

24.     Defendant Area Wide Protective, Inc. is a corporation organized under Ohio law, headquartered in Ohio, and has its principal place of business located at 4244 Mt. Pleasant Street NW, North Canton, Ohio 44720. According to its website, Defendant Area Wide Protective, Inc. "deliver[s] comprehensive traffic management services in support of infrastructure projects, construction, and utility work that improve roadways and communities across the country[, s]pecialize[s] in supplying the manpower to guide traffic safely around work zones[, and] provide[s] traffic consultation and traffic design services, as well as traffic control equipment rental."

25.     Defendant W.E.K. Enterprises, LLC, formerly known as RoadTek Traffic Solutions LLC, is a limited liability company organized under Virginia law, headquartered in Virginia, and has its principal place of business located at 5874 North Lee Highway, Suite 100, Fairfield, Virginia 24435. According to its website, Defendant W.E.K. Enterprises, LLC offers a number of services, including traffic control, flagging operations, and portable port-a-johns; and

states that "[i]t is the policy of RoadTek Traffic Solutions, to provide a safe and healthful workplace for our employees and to observe all Local, State and Federal Laws and Regulations."

26.      Upon information and belief, Defendant Area Wide Protective, Inc. has acquired Defendant W.E.K. Enterprises, LLC, and is now operating as the parent company of Defendant W.E.K. Enterprises, LLC.

27.      Defendants are an enterprise engaged in commerce under the FLSA because material hereto they had an annual gross volume of sales more than $500,000.00.

28.      At all times relevant, Defendants were Named Plaintiffs' employer and the employer of all other similarly situated individuals as defined by the FLSA and applicable state law.

29.      During the period of June 2020 through September 2020, Named Plaintiff Nelson was employed by Defendants as a Flagger, and currently works as a Crew Chief for Defendants after his promotion in September 2020. In this capacity, Named Plaintiff Nelson performed substantial and ongoing employment duties for the benefit of Defendants in the Commonwealth of Virginia. As of the date this Complaint was filed, Named Plaintiff Nelson is presently employed by Defendants.

30.      During the period of September 2020 to the present, Named Plaintiff Porter has been employed by Defendants in the position of Flagger. In this capacity, Named Plaintiff Porter performed substantial and ongoing employment duties for the benefit of Defendants in the Commonwealth of Virginia. As of the date this Complaint was filed, Named Plaintiff Nelson is presently employed by Defendants.

31.      Plaintiffs are informed, believe, and allege, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendant, carried out a joint scheme, business

plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendant pursuant to a Joint Employer relationship.  Furthermore, Defendants in all respects acted as the employer and/or joint employer of Plaintiffs and the class members.

32.     Plaintiffs are informed, believe, and allege, that each and all of the acts and omissions alleged herein were performed by, or are attributable to, all Defendants, acting as the agent or alter ego for each other, with legal authority to act on each other's behalf.  The acts of any and all Defendants were in accordance with, and represent, the official policy of all Defendants, collectively.

33.     At all relevant times, each Defendant acted within the scope of such agency or employment, or ratified each and every act or omission complained of herein.  At all relevant times, each Defendant aided and abetted the acts and omissions of all other Defendants in proximately causing the damages herein alleged.

34.     Plaintiffs are informed, believe, and allege, that each of said Defendants is in some manner intentionally, negligently or otherwise responsible for the acts, omissions, occurrences and transactions alleged herein.

35.     By acting as the Named Plaintiffs in this action, each Named Plaintiff, by including his name on the caption of this Collective and Class Action Complaint, affirms his written consent to participate as a plaintiff in a collective action to seek unpaid wages and damages under the FLSA and to act as class representatives for the Federal Rule 23 class claims alleged herein.

## **FACTUAL ALLEGATIONS**

36.     Defendants employ Flaggers, Crew Chiefs, or similar positions in their service branches throughout the Commonwealth of Virginia. Upon information and belief, Defendants own and operate at least seven branches throughout the Commonwealth of Virginia located in the

following locations: 10 Mid Valley Lane, Verona, Virginia (Staunton/Harrisonburg branch); 15 Eastern Ave NE, Roanoke, Virginia (Roanoke branch); 5874 N. Lee Hwy, Fairfield, Virginia (Fairfield branch); 301 First Street NE, Pulaski, Virginia (Pulaski branch); 2204 Commerce Road, Richmond, Virginia (Richmond branch); 15 Capital Ave, Fredericksburg, Virginia (Fredericksburg branch); and 9236 Mike Garcia Drive, Manassas, Virginia (Northern Virginia branch).

37.     Named Plaintiffs were employed and currently work for Defendants in Defendants' Northern Virginia branch.

38.     Plaintiffs' job duties include safely and appropriately setting up work-zones in accordance with state or local Department of Transportation and Safety policies and procedures; reading, understanding and following safety policies and managers' instructions; placing traffic control devices, signs, and markers in compliance with work zone diagrams; maintaining safety zones while directing movement of vehicular traffic through work zones using sign, hand, and flag signals; wear and maintain personal protective equipment ("PPE"); ensure Defendants' customers' workers are warned of any impending work zone violation if an incoming vehicle does not adhere to work zone; ensure all safety equipment, vehicles, lights, signs and company owned property is handled in a safe careful manner; among other duties.

39.     Defendants compensate Flaggers, Crew Chiefs, or similar positions, on an hourly basis.  Defendant classifies these employees as non-exempt under the FLSA.

40.     Defendants requires Flaggers, Crew Chiefs, or similar positions to work approximately twelve (12) hour shifts, five (5) days per week, with a thirty (30) minute unpaid lunch break per shift, which Defendants automatically deduct from Plaintiffs' time. Defendants require Plaintiffs to arrive to work at approximately 5:30am every morning and Plaintiffs do not

leave work until 5:30-6:00pm every night. Some nights, Plaintiffs work until approximately 9:00pm.

41.     Additionally, Plaintiffs typically work one to two Saturdays or Sundays per month. During such weeks, Plaintiffs work approximately twelve (12) hour shifts, six (6) days per week, with a thirty (30) minute unpaid lunch break per shift, which Defendants automatically deduct from Plaintiffs' time.

42.     Prior to May 2021, Defendants did not require Plaintiffs to record their hours worked. Instead, Defendants determined Plaintiffs' hours worked by taking the time recorded on the first and last "billing tickets" of each day, which are invoices generated for Defendants' clients. Defendant would use the time shown on the first billing ticket of the day as Plaintiffs' "start" time and would use the time shown on the last billing ticket of the day as Plaintiffs' "end" time.

43.     Starting in May 2021, Defendants now require Plaintiffs to record the time they arrive at Defendants' shop in the morning until they leave for the first job site on paper timesheets. However, Defendants do not compensate Plaintiffs at their appropriate regular or overtime rate for this time, and instead compensate Plaintiffs at a minimum wage rate for whatever hours are reflected on these timesheets. Otherwise, Defendants still do not compensate Plaintiffs for their post-shift work, and still use the "billing tickets" to determine "start" and "end" times for Plaintiffs' shifts.

44.     During the relevant period, Plaintiffs performed approximately ninety (90) minutes of pre-shift work each workday, including preparing equipment, loading work trucks with equipment and water, turning in the previous day's paperwork, inspecting all vehicles and equipment, fueling vehicles, and other tasks. Because these duties must be performed by Plaintiffs before the time recorded on the first "billing ticket" of the day, which Defendants use as the "start

time" for Plaintiffs' shifts, Plaintiffs' time engaged in such pre-shift activities is not properly captured or compensated.

45.     During the relevant period, Plaintiffs typically perform approximately ninety (90) minutes of post-shift work each workday, including picking up cones, cleaning up road flares, picking up signage, traveling back to Defendants' shop, unloading equipment from work trucks, inspecting equipment and vehicles for damage, and numerous other tasks to properly wind down Plaintiffs' shifts. Because these duties must be performed after the time that is recorded on the last "billing ticket" of the day, which Defendants use as the "end time" for Plaintiffs' shifts, Plaintiffs' time engaged in such post-shift activities are not properly captured or compensated.

46.     This required, pre- and/or post-shift work has to be performed before the "start" of each shift and following the "end" of each shift. The pre-shift work is necessary in order for Plaintiffs to fulfil their job duties while on job sites. Additionally, the post-shift work is necessary to adequately wind down Plaintiffs' work for the day and to protect Defendants' equipment, vehicles, and property.

47.     Defendants, through their actions, directives, and policies, mandated that Plaintiffs perform this pre- and/or post-shift work.

48.     If Plaintiffs do not perform this pre- and/or post-shift work, they risk receiving verbal and written warnings on their records.  Multiple verbal and written warnings could result in disciplinary action or termination from employment.

49.     If Plaintiffs arrived immediately prior to the scheduled start of their first job, they could not feasibly perform all required pre-shift work necessary to perform their job duties when the first scheduled job begins, and they would therefore receive verbal or written warnings for failing to perform all required pre-shift work.  Additionally, prior to May 2021, Plaintiffs would

not be compensated for any work until they arrive to the first job site, other than Crew Chiefs receiving minimum wage compensation for approximated travel time via Google Maps.

50.     Prior to May 2021, Defendants did not compensate Plaintiffs for *any* work performed prior to the time listed on the first "billing ticket," or any work performed after the time recorded on the last "billing ticket." After May 2021, Defendants now compensate Plaintiffs for pre-shift work and hours reflected on paper time sheets, but Defendants only do so at a minimum wage rate, not Plaintiffs' regular rate or proper overtime rate. Additionally, Defendants still do not compensate Plaintiffs for any post-shift work completed.

51.     Indeed, while Defendants compensate Crew Chiefs at the minimum wage rate for travel time to the first job site and travel time from the last job site, Defendants do this on an approximate basis via the time displayed in Google Maps. Defendants do not compensate any other Plaintiff, including Flaggers, for the time spent traveling to the first job site and time spent traveling from the last job site.

52.     While Defendants do provide Crew Chiefs with *some* compensation for travel time, Defendants do not compensate Crew Chiefs for *all* of the travel time to the first job site and travel time from the last job site because Defendants do not compensate Crew Chiefs for the *actual* time spent traveling by Crew Chiefs, but rather pay Crew Chiefs for the time that is reflected in a GPS search using Google Maps. This method does not account for factors which could increase travel time from the time quoted by Google Maps, such as traffic, streetlights, inclement weather, and other factors. Every other employee, other than Crew Chiefs, are not paid for the time they spend traveling *at all*.

53.     As such, all Plaintiffs, including Crew Chiefs, are not properly paid for the time they spend traveling to the first job site and time spent traveling back from the last job site.

54.     Further, Defendants have a policy of automatically deducting a thirty (30) minute lunch break from Plaintiffs' time each day, despite Plaintiffs often working through this time and not being able to take lunch breaks.

55.     Upon starting his employment with Defendants, Named Plaintiff Nelson was informed by his Facility Manager at the time, Quinton Garnett, that a thirty (30) minute lunch break would be automatically deducted from his time each workday.

56.     While Quinton Garnett, who is now Area Manager for Defendants, has stated that Defendants look at notations on billing tickets to determine whether Plaintiffs took a lunch break for that day, and subsequently follow up with Plaintiffs if no notations are present, Named Plaintiffs have never been asked by Defendants if they were unable to take a lunch break.

57.     Plaintiffs are often not able to leave the job sites to take a lunch break for a variety of reasons. For instance, Plaintiffs are often on job sites where they have to control the flow of traffic around construction sites. These construction sites have numerous hazards, such as holes in the ground, which require the constant presence of Plaintiffs to direct traffic around the hazards. Thus, Plaintiffs are unable to take any break whatsoever until such hazards are neutralized.

58.     Defendants' managers are aware that Plaintiffs often work through their lunch breaks. Defendants' managers inform Plaintiffs upon hire that Plaintiffs might need to eat their lunch when driving between job sites or that they might not be able to eat lunch at all. Despite this, Defendants still automatically deduct a thirty (30) minute lunch break from Plaintiffs' time, regardless of whether Plaintiffs actually take a lunch break.

59.     Moreover, Named Plaintiff Porter has informed Defendants' Facility Manager at the Northern Virginia branch, Alex Nunnally, when he is not able to take lunch breaks. However,

Named Plaintiff Porter was not credited back his time for the automatically deducted lunch breaks, despite informing management that he was not able to take his lunch breaks.

60.      On average, Plaintiffs worth through their lunch breaks approximately four (4) to five (5) days per week.

61.      Defendants also do not properly pay Plaintiffs for the undercounted overtime hours that Defendants list on Plaintiffs' earnings statements. Such overtime hours are undercounted because of the aforementioned pre-and/or post-shift work performed, travel time, and automatically deducted lunch breaks, which Defendants do not compensate Plaintiffs for. However, Plaintiffs are not properly compensated at the appropriate overtime rate even for the overtime hours that Defendants list on Plaintiffs' earnings statements. This is because Defendants often list "OT" line items on Plaintiffs' earnings statements with a certain amount of "hours" on the line item, but do not compensate Plaintiffs for this time.

62.      Additionally, any payments that are made to Plaintiffs under the "OT" line items in Plaintiffs' earnings statements do not accurately match the proper overtime compensation and proper overtime rate that Plaintiffs are entitled to pursuant to the FLSA, VMWA, and VWPA.

63.      Beginning in early 2021, Defendant began to include a line item on one of Plaintiffs' earnings statements for "retro pay." Incredibly, even though Defendants have included this line item on Plaintiffs' earnings statement, Plaintiffs have not actually been paid any of the "retro pay" listed.

64.      Defendants have not provided Plaintiffs with any explanation for what this "retro pay" is or why Defendants listed it on Plaintiffs' earnings statements. Defendants have also not provided Plaintiffs with any explanation for why Plaintiffs have not received this pay.

65.     Defendants' failure to compensate for all pre-and/or post-shift work performed, travel time, and automatically deducted lunch breaks has affected all Plaintiffs similarly.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

66.     Named Plaintiffs bring the First Cause of Action of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated employees.

67.     Members of the FLSA class are similarly situated.

68.     Members of the FLSA class have substantially similar job requirements and pay provisions, and are subject to common practices, policies, or plans that fail to compensate them for all work performed and fail to compensate them at the appropriate overtime rate for all hours worked in excess of forty (40) per week.

69.     There are numerous (in excess of 300) similarly situated current and former Flaggers, Crew Chiefs, or similar positions that fall within the scope of the aforementioned FLSA class.

70.     These similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.  Members of the proposed FLSA class, therefore, should be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

71.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiffs.

72.     Named Plaintiffs consent in writing to assert their claims for unpaid wages under the FLSA pursuant to 29 U.S.C. § 216(b).  Named Plaintiffs signed consent forms are filed with

the Court as Exhibit A to this Complaint.  As this case proceeds, it is likely other individuals will file consent forms and join as opt-in plaintiffs.

73.     Named Plaintiffs request that they be permitted to serve as representatives of those who consent to participate in this action, and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

## RULE 23 VMWA AND VWPA CLASS ACTION ALLEGATIONS

74.     Named Plaintiffs bring the Second, Third, and Fourth Causes of Action of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all similarly situated employees, for relief to redress and remedy Defendant's violations of the VMWA and VWPA, Virginia Code §§ 40.1-28.8 *et seq.*, and 40.1-29 *et seq.*

75.     Plaintiffs bring their state law counts for violations of the VMWA and VWPA as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all similarly situated employees, for relief to redress and remedy Defendants' violations of the VMWA and VWPA and failure to pay all wages due and owing pursuant to Defendants' written employment contract and/or compensation plan and/or Defendants' failure to pay full reasonable consideration for all compensable work duties performed for Defendants' benefit.

76.     Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of the Named Plaintiffs and the putative Class Plaintiffs.

77.     Plaintiffs reserve the right to establish Subclasses, or modify any Class or Subclass definition, as appropriate.

78.    Members of the Class and/or any Subclasses will be collectively referred to as "class members."  Plaintiffs reserve the right to re-define the Class and add additional Subclasses as appropriate based on investigation, discovery and specific theories of liability.

79.    <u>Common Questions Predominate</u>: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all putative class members have been harmed by Defendants' failure to lawfully compensate them.  The common questions of law and fact include, but are not limited to, the following:

(a)    Whether pre- and/or post-shift work performed by putative Class Members is compensable under the VMWA and/or VWPA;

(b)    Whether Defendants' failure to compensate putative Class Members for pre- and/or post-shift work is in violation of the VMWA and/or VWPA;

(c)    Whether travel time performed by putative Class Members is compensable under the VMWA and/or VWPA;

(d)    Whether Defendants' failure to compensate putative Class Members for travel time is in violation of the VMWA and/or VWPA;

(e)    Whether thirty (30) minute lunch breaks Defendants' automatically deduct from Class Members' time is compensable under the VMWA and/or VWPA when Class Members do not take a lunch break;

(f)    Whether Defendants' automatically deducting a thirty (30) minute lunch break from putative Class Members' time on any day where Class Members do not take a lunch break is in violation of the VMWA and/or VWPA;

(g)    Whether Defendants failed to compensate putative Class Members at the earned, accrued, and/or promised rate for all hours worked in excess of forty (40) each week;

(h)    Whether Defendant failed to compensate putative Class Members for all of their earned, accrued, and/or promised wages, including, but not limited to, straight time and overtime on their regular pay date, in violation of the VMWA and/or VWPA;

(i)    Whether Defendants required Plaintiffs and class members to work over eight (8) hours per day and/or over forty (40) hours per week and failed to pay them overtime compensation at the proper rate;

(e)    Whether Defendants failed to provide accurate itemized wage statements to Plaintiffs and class members; and

(g)    Whether Defendants' conduct was willful, reckless, or was done knowingly.

80.    There is a well-defined community of interest in this litigation and the proposed Class is readily ascertainable:

(a)    Numerosity:  The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  While the exact number of class members is unknown to Named Plaintiffs at this time, upon information and belief, the class comprises at least 300 individuals.  The identities of the Class Members are readily ascertainable by inspection of Defendants' employment and payroll records.

(b)    Typicality: The claims of the Named Plaintiffs are typical of the claims which could be alleged by any member of the putative Class, and the relief sought is typical of the

relief which would be sought by each member of the Class in separate actions.  All putative Class Members were subject to the same compensation practices of Defendants, as alleged herein, of failing to pay employees for all pre- and/or post-shift work, travel time, automatically deducted lunch breaks, and for hours worked in excess of forty (40) each week at the appropriate hourly rate. Defendants' compensation policies and practices affected all putative Class Members similarly, and Defendants benefited from the same type of unfair and/or unlawful acts as to each putative Class Member. Named Plaintiffs and members of the proposed Class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

(c)    Adequacy of Representation: Named Plaintiffs will fairly and adequately represent and protect the interests of all members of the Class because it is in his best interests to prosecute the claims alleged herein to obtain full compensation and penalties due them and the Class.  Plaintiffs' attorneys, as proposed class counsel, are competent and experienced in litigating large employment class actions and versed in the rules governing class action discovery, certification, and settlement.  Plaintiffs have incurred, and throughout the duration of this action, will continue to incur attorneys' fees and costs that have been and will be necessarily expended for the prosecution of this action for the substantial benefit of each class member.

(d)    Superiority: A class action is superior to other available means for the fair and efficient adjudication of this controversy.   Individual joinder of all class members is impracticable.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender.  Because the losses, injuries and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual

litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims are treated as a class action.  Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendants, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties.  The issue in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

81.     Public Policy Considerations: Employers in the Commonwealth of Virginia violate employment and labor laws every day. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing actions because they believe their former employers might damage their future endeavors through negative references and/or other means. Class actions provide the class members who are not named in the complaint with a type of anonymity that allows for the vindication of their rights at the same time as affording them privacy protections.

82.     Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed class.

**FIRST CAUSE OF ACTION**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. § 201, *et seq.***
**Brought by Named Plaintiffs on Behalf of Themselves and all Similarly Situated Employees**

83.     Plaintiffs hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

84.     At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

85.     At all relevant times, Defendants have employed, and continue to employ, "employee[s]," including Plaintiffs, and each of the members of the prospective FLSA Class, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

86.     At all relevant times, Defendants have had gross operating revenues in excess of $500,000.

87.     The FLSA, pursuant to §§ 206 and 207, requires each covered employer, including Defendants, to compensate all non-exempt employees at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a single workweek.

88.     At all relevant times, Defendants, pursuant to their policies and practices, failed and refused to pay for all hours worked to Plaintiffs, including for required, pre- and/or post-shift work performed by Plaintiffs, travel time performed by Plaintiffs, and for automatically deducted thirty (30) minute lunch breaks when Plaintiffs did not take lunch breaks.

89.     Additionally, at all relevant times, Defendants, pursuant to their policies and practices, failed and refused to pay Plaintiffs at their regular rate or proper overtime rate for pre-

shift work performed after May 2021, and instead compensate Plaintiffs for this time at a minimum wage.

90.     Defendants' failure to pay Plaintiffs for all hours worked, despite the fact that, upon information and belief, Defendants knew of their obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b), since Defendants cannot show they acted in good faith, and a three (3) year, rather than two (2) year statute of limitations, since Defendants' acts constitute willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a)

91.     As a result of Defendants' unlawful acts, Plaintiffs have been deprived of compensation for all required pre- and/or post-shift hours worked, travel time, and automatically deducted lunch breaks, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### Violation of the Virginia Minimum Wage Act
### Virginia Code § 40.1-28.8 *et seq.*
**Brought by Named Plaintiffs on Behalf of Themselves and all Similarly Situated Employees**

92.     Plaintiffs hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

93.     At all relevant times, Defendants have employed, and/or continue to employ, Plaintiffs within the meaning of the VMWA.

94.     Defendants employ Named Plaintiffs, and similarly situated employees, within the Commonwealth of Virginia.

95.     Virginia Code § 40.1-28.8 *et seq.* provides that, prior to May 1, 2021, every employer shall pay to each of its employees' wages at a rate not less than the federal minimum wage and the payment of a lesser wage than the minimum so fixed is unlawful.

96.     Virginia Code § 40.1-28.8 *et seq.* also provides that "[f]rom May 1, 2021, until January 1, 2022, every employer shall pay to each of its employees' wages at a rate not less than the greater of (i) $9.50 per hour or (ii) the federal minimum wage."

97.     During the relevant time period, Defendants paid Plaintiffs and class members less than minimum wages when they did not pay Plaintiffs and class members for all hours worked. For example, whenever Plaintiffs performed pre- and/or post-shift work, travel time, or worked through their lunch break, Defendants did not pay them *at all* for the time they spent working. To the extent these hours do not qualify for the payment of overtime, Plaintiffs and class members were not being paid at least minimum wages for their work.

98.     During the relevant time period, Defendants regularly failed to pay at least minimum wages to Plaintiffs and class members for all hours worked pursuant to Virginia Code § 40.1-28.10.

99.     Defendants' failure to pay Plaintiffs and class members the required minimum wages violate Virginia Code § 40.1-28.10.  Pursuant to Virginia Code § 40.1-29, Plaintiffs and class members are entitled to recover the unpaid balance of their minimum wage compensation as well as interest, costs, and attorneys' fees.

100.     Pursuant to Virginia Code § 40.1-29, Plaintiff and class members are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

101.     Pursuant to Virginia Code § 40.1-28.11, whoever knowingly and intentionally violates any provisions of this article shall be punished by a fine of not less than $10 nor more than $200.

**THIRD CAUSE OF ACTION**
**Violation of the Virginia Wage Payment Act**

**For Failure to Pay Proper Wages**
**Virginia Code § 40.1-29 *et seq.***
**Brought by Named Plaintiffs on Behalf of Themselves and all Similarly Situated Employees**

102.    Plaintiffs hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

103.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiffs within the meaning of the VWPA.

104.    Defendants employ Named Plaintiffs, and similarly situated employees, within the Commonwealth of Virginia.

105.    Virginia Code § 40.1-29 *et seq.* provides that it is unlawful to employ persons for over forty (40) hours in a workweek without compensating them at a rate of pay of one and one-half times the person's regular rate of pay.

106.    Pursuant to Virginia Code § 40.1-29 *et seq.*, during the relevant time period, Defendants were required to compensate Plaintiffs and class members for all overtime hours worked, calculated at one and one-half (1½) times the regular rate of pay for hours worked in excess of forty (40) hours per week.

107.    Plaintiffs and class members were non-exempt employees entitled to the protections of the VWPA.

108.    During the relevant time period, Defendants failed to pay Plaintiffs and class members overtime wages for all overtime hours worked.

109.    In violation of the VWPA, Defendants have knowingly and willfully refused to perform their obligations and compensate Plaintiffs and class members for all wages earned and all hours worked, including unpaid work performed as alleged above.

110.    Defendants' failure to pay Plaintiffs and class members the unpaid balance of overtime compensation, as required by Virginia law, violates the provisions of the VWPA, and is therefore unlawful.

111.    Pursuant to the VWPA, Plaintiffs and class members are entitled to recover their unpaid overtime as well as an additional equal amount as liquidated damages, interest, costs, and attorneys' fees. Additionally, because Defendants knowingly failed to pay wages to Plaintiffs in accordance with the VWPA, Plaintiffs are entitled to an amount equal to triple the amount of wages due.

<u>**FOURTH CAUSE OF ACTION**</u>
**Violation of the Virginia Wage Payment Act**
**For Failure to Provide Accurate Itemized Wage Statements**
**Virginia Code § 40.1-29 *et seq.***
**Brought by Named Plaintiffs on Behalf of Themselves and all Similarly Situated Employees**

112.    Plaintiffs hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

113.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiffs within the meaning of the VWPA.

114.    Defendants employ Named Plaintiffs, and similarly situated employees, within the Commonwealth of Virginia.

115.    Virginia Code § 40.1-29(c) requires Defendants to provide each employee with an accurate wage statement, in writing, by a paystub or online accounting, that shows the name and address of the employer; the number of hours worked during the pay period if the employee is paid on the basis of (i) the number of hours worked or (ii) a salary that is less than the standard salary level adopted by regulation of the U.S. Department of Labor pursuant to § 13(a)(1) of the federal Fair Labor Standards Act, 29 U.S.C. § 213(a)(1), as amended, establishing an exemption from the

Act's overtime premium pay requirements; the rate of pay; the gross wages earned by the employee during the pay period; and the amount and purpose of any deductions therefrom. The paystub or online accounting shall include sufficient information to enable the employee to determine how the gross and net pay were calculated.

116.    During the relevant time period, Defendants have knowingly and intentionally failed to comply with Virginia Code § 40.1-29(c) on wage statements that were provided to Plaintiffs and class members.  The deficiencies include, among other things, the failure to correctly state the gross and net wages earned, total hours worked and all applicable hourly rates in effect and the number of hours worked at each hourly rate by Plaintiffs and class members.

117.    As a result of Defendants' knowing and intentional failure to comply with Virginia Code § 40.1-29(c), Plaintiffs and class members have suffered injury and damage to their statutorily-protected rights.  Specifically, Plaintiffs and class members are deemed to suffer an injury pursuant to Virginia Code §§ 40.1-29(e) and 40.1-29(k) where, as here, Defendants intentionally violated Virginia Code 40.1-29(c).  Plaintiffs and class members were denied both their legal right to receive, and their protected interest in receiving, accurate itemized wage statements under Virginia Code 40.1-29(c). In addition, because Defendants failed to provide the accurate rates of pay on wage statements, Defendants have prevented Plaintiffs and class members from determining if all hours worked were paid at the appropriate rate and the extent of the underpayment. Plaintiffs have had to file this lawsuit in order to analyze the extent of the underpayment, thereby causing Plaintiffs to incur expenses and lost time. Plaintiffs would not have had to engage in these efforts and incur these costs had Defendants provided the accurate hours worked, wages earned, and rates of pay. This has also delayed Plaintiffs' ability to demand and recover the underpayment of wages from Defendants.

118.     Pursuant to Virginia Code 40.1-29(j), in addition to any civil or criminal penalty provided by this section, and without regard to any exhaustion of alternative administrative remedies provided for in this section, if an employer fails to pay wages to an employee in accordance with this section, the employee may bring an action, individually, jointly, with other aggrieved employees, or on behalf of similarly situated employees against the employer in a court of competent jurisdiction to recover payment of the wages, and the court shall award the wages owed, an additional equal amount as liquidated damages, plus prejudgment interest thereon as provided in subsection G, and reasonable attorney fees and costs. If the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section, the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs.

## PRAYER FOR RELIEF

Plaintiffs, on their own behalf and on behalf of all others similarly situated, pray for relief and judgment against Defendants, jointly and severally, as follows:

1.      For certification of this action as a collective action under the FLSA, including certifying the Class alleged by Named Plaintiffs;

2.      To issue notice of this collective action at the earliest possible time, or allow Named Plaintiffs to do so, to all individuals who were, are, or will be employed by Defendants in Virginia as Flaggers, Crew Chiefs, or other similar positions who were not compensated for all of their hours worked, including, but not limited to, above forty (40) per week, and/or who were not paid overtime compensation at the proper overtime rate, within three (3) years prior to the commencement of this action, through the date of judgment or final disposition in this action.  Such

notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

3.     For appointment of Named Plaintiffs Carl Nelson and Khari Porter as the class representatives;

4.     For appointment of Gregg C. Greenberg, of Zipin, Amster, and Greenberg, LLC, as lead class counsel for all purposes;

5.     For appointment of Francisco E. Mundaca, of The Spiggle Law Firm, PLLC, as co-counsel for all purposes;

6.     For appointment of Robert W.T. Tucci, of The Spiggle Law Firm, PLLC, as co-counsel for all purposes;

7.     For certification of this action as a class action under the VMWA and VWPA, and designate Named Plaintiffs Carl Nelson and Khari Porter as the representatives on behalf of all those similarly situated under the VMWA and VWPA class;

8.     Award Plaintiffs and all those similarly situated Class Plaintiffs actual damages in the amount of all wages found due to Plaintiffs and those similarly situated Class Plaintiffs and an award of liquidated damages as provided by the FLSA, VMWA, and VWPA, including an award of treble damages if the Court deems so appropriate;

9.     Award Plaintiffs and all those similarly situated Class Plaintiffs pre- and post-judgment interest at the statutory rate;

10.     Award Plaintiffs attorneys' fees, costs, and interest pursuant to the FLSA, U.S.C. § 216(b), and pursuant to the VMWA, Virginia Code § 40.1-28.8 *et seq*., and VWPA, Virginia Code § 40.1-29 *et seq*.; and

11.     Award Named Plaintiffs and all those similarly situated Class Plaintiffs further legal and/or equitable relief as this Court deems necessary, just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully Submitted,

/s/ *Gregg Greenberg*
Gregg C. Greenberg
Virginia State Bar No. 79610
ZIPIN, AMSTER & GREENBERG, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Telephone:     (301) 587-9373
Facsimile:     (240) 839-9142
E-Mail: ggreenberg@zagfirm.com

/s/ *Francisco Mundaca*
Francisco Mundaca
Virginia State Bar No. 96073
Robert W.T. Tucci
*Pro Hac Vice admission pending*
North Carolina State Bar No. 55014
THE SPIGGLE LAW FIRM, PLLC
4830A 31st St., S., Suite A
Arlington, Virginia 22206
Telephone:     (202) 449-8527
Facsimile:     (202) 517-9179
E-Mail: fmundaca@spigglelaw.com
            rtucci@spigglelaw.com

*Counsel for Named Plaintiffs, Carl Nelson,*
*Khari Porter, and all others similarly situated*