**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| CARL NELSON and KHARI PORTER, individually and on behalf of all others similarly situated<br><br>      *Plaintiffs,*<br><br>      v.<br><br>AREA WIDE PROTECTIVE, INC.; and W.E.K. ENTERPRISES, LLC, formerly known as ROADTEK TRAFFIC SOLUTIONS LLC,<br><br>      *Defendants.* | Case No.: 1:21-cv-00895-AJT-MSN |

<u>**MEMORANDUM OF LAW IN SUPPORT OF NAMED PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY THIS MATTER AS A COLLECTIVE ACTION AND FOR A COURT-AUTHORIZED NOTICE TO BE ISSUED UNDER SECTION 216(B) OF THE FAIR LABOR STANDARDS ACT**</u>

**TABLE OF CONTENTS**

I.      INTRODUCTION ...........................................................................................................1

II.     FACTUAL BACKGROUND..........................................................................................3

      A.      Named Plaintiffs and Members of the Proposed Collective Perform the
        Same Duties and Work the Same/Similar Hours......................................................3

            1.      Defendants Do Not Compensate Named Plaintiffs and Members of
                the Proposed Collective for Pre- and/or Post-Shift Work and
                Travel Time. ................................................................................................4

            2.      Despite Defendants' Awareness That Plaintiffs Are Frequently Not
                Able to Take a Lunch Break, Defendants Still Automatically
                Deduct Thirty (30) Minutes Each Day from Plaintiffs' Time for
                Lunch Breaks. ..............................................................................................7

      B.      Named Plaintiffs and Members of the Proposed Collective Were Subject
        to the Same Unlawful Timekeeping and Compensation Policies of
        Defendants. ..............................................................................................................8

III.    ARGUMENT.................................................................................................................10

      A.      The Standard for Conditional Certification ............................................................10

            1.      A Lenient Standard Is Applied for Conditional Certification and
                Court-Facilitated Notice in FLSA Collective Actions. .............................11

      B.      Named Plaintiffs Have Amply Met Their Burden of Production and Made
        a Modest Factual Showing that a Group of Similarly Situated Individuals
        Exist. .......................................................................................................................14

      C.      The Proposed Notice to Potential Opt-Ins Is Appropriate......................................18

            1.      Named Plaintiffs' Proposed Judicial Notice Is Accurate and
                Informative. ...............................................................................................18

            2.      A Production of a List of Putative Class Members Is Necessary to
                Facilitate Notice..........................................................................................18

            3.      Named Plaintiffs Should Be Able to Send Employees the Proposed
                Notice Via Email and/or Text Message, in Addition to Regular
                Mail, and Defendants Should Be Required to Post the Notice at
                Putative Plaintiffs' Places of Employment and Enclose the Notice
                in Putative Plaintiffs' Paystubs...................................................................20

IV.     CONCLUSION .............................................................................................................23

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Alderoty v. Maxim Healthcare Servs., Inc.*,
    2015 WL 5675527 (D. Md. Sept. 23, 2015) ............................................................................21

*Alequin v. Darden Restaurants, Inc.*,
    2013 WL 3939373 (S.D. Fla. July 12, 2013) .........................................................................20

*Alfaro Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.*
    No. 5:13-CV-810-F, 2015 WL 5703569 (E.D.N.C. Sept. 28, 2015) .......................................2

*Andreana v. Virginia Beach City Pub. Sch.*,
    2018 WL 2144151 (E.D. Va. May 9, 2018) ....................................................................11, 12

*Beasely v. GC Servs. LP*
    270 F.R.D. 442 (E.D. Mo. 2010) .............................................................................................3

*Beasley v. Custom Commc'ns, Inc.*,
    2016 WL 5468255 (E.D.N.C. Sept. 28, 2016) .......................................................................12

*Benson v. Asurion Corp.*
    2010 WL 4922704 (M.D. Tenn. Nov. 29, 2010) ......................................................................3

*Bishop v. AT & T Corp.*
    256 F.R.D. 503 (W.D. Pa. 2009) .............................................................................................3

*Bobbitt v. Broadband Interactive, Inc.*,
    2012 WL 1898636 (M.D. Fla. May 23, 2012) .......................................................................20

*Burch v. Qwest Commc'ns Int'l, Inc.*
    500 F. Supp. 2d 1181 (D. Minn. 2007) ...............................................................................3, 16

*Butler v. DirectSAT USA, LLC*,
    876 F. Supp. 2d 560 (D. Md. 2012) ...........................................................................14, 20, 21

*Byard v. Verizon W. Virginia, Inc.*
    287 F.R.D. 365 (N.D.W. Va. 2012) ....................................................................................3, 19

*Calder v. GGC-Baltimore, LLC*,
    2013 WL 3441178 (D. Md. July 8, 2013) ..............................................................................21

*Calderon v. Geico Gen. Ins. Co.*,
    2011 WL 98197 (D. Md. Jan. 12, 2011) ....................................................................11, 15, 19

*Campbell v. City of New York*,
2017 WL 3206332 (S.D.N.Y. July 25, 2017) ...........................................................3

*Cantu v. Milberger Landscaping, Inc.*,
2014 WL 1413500 (W.D. Tex. Apr. 3, 2014) ...........................................................2

*Clarke v. Convergys Customer Mgmt. Grp., Inc.*
370 F. Supp. 2d 601 (S.D. Tex. 2005) .....................................................................3

*Davis v. BT Americas Inc.*,
2016 WL 7131981 (E.D. Va. Nov. 9, 2016)............................................................15

*Diaz v. Quality Crab Co.*,
2011 WL 4498939 (E.D.N.C. Sept. 27, 2011) ...................................................16, 23

*Earls v. Forga Contracting, Inc.*,
2020 WL 1516813 (W.D.N.C. Mar. 30, 2020)..........................................................2

*Edwards v. Optima Health Plan*,
2021 WL 1174724 (E.D. Va. Mar. 29, 2021)......................................................12, 13

*Enriquez v. Cherry Hill Mkt. Corp.*,
2012 WL 440691 (E.D.N.Y. Feb. 10, 2012) ..........................................................23

*Esedebe v. Circle 2, Inc.*,
2021 WL 232595 (E.D. Va. Jan. 22, 2021) .........................................14, 15, 19, 20

*Essame v. SSC Laurel Operating Co. LLC*,
847 F. Supp. 2d 821 (D. Md. 2012) .................................................................2, 16

*Faust v. Comcast Cable Commc'ns Mgmt., LLC*
2011 WL 5244421 (D. Md. Nov. 1, 2011) ...............................................................3

*Fisher v. Michigan Bell Tel. Co.*
665 F. Supp. 2d 819 (E.D. Mich. 2009) ..................................................................3

*Gaffers v. Kelly Servs., Inc.*
203 F. Supp. 3d 829 (E.D. Mich. 2016) ..................................................................3

*Gagliastre v. Capt. George's Seafood Rest., LP*,
2018 WL 9848232 (E.D. Va. Mar. 13, 2018).....................................................12, 21, 22

*Genesis Healthcare Corp. v. Symczyk*,
569 U.S. 66 (2013)........................................................................................11

*Gionfriddo v. Jason Zink, LLC*,
769 F. Supp. 2d 880 (D. Md. 2011)......................................................................15

*Grayson v. K Mart Corp.*,
   79 F.3d 1086 (11th Cir. 1996) ........................................................................................14

*Hargrove v. Ryla Teleservices, Inc.*,
   2012 WL 489216 (E.D. Va. Jan. 3, 2012) ......................................................................19

*Harper v. Lovett's Buffet, Inc.*
   185 F.R.D. 358 (M.D. Ala. 1999)....................................................................................17

*Hart v. Barbeque Integrated, Inc.*,
   299 F. Supp. 3d 762 (D.S.C. 2017) ................................................................................12

*Hathaway v. Shawn Jones Masonry*,
   2012 WL 1252569 (W.D. Ky. Apr. 13, 2012)...................................................................2

*Hipp v. Liberty Nat. Life Ins. Co.*,
   252 F.3d 1208 (11th Cir. 2001) ......................................................................................14

*Hoffman-LaRoche, Inc. v. Sperling*,
   493 U.S. 165, 172-73 (1989) ...................................................................................passim

*Holmes v. Charleston Ret. Inv'rs, LLC*,
   115 F. Supp. 3d 653 (D.S.C. 2014) ................................................................................16

*Irvine v. Destination Wild Dunes Mgmt., Inc.*,
   132 F. Supp. 3d 707 (D.S.C. 2015) ................................................................................21

*Jesiek v. Fire Pros, Inc.*,
   275 F.R.D. 242 (W.D. Mich. 2011)...................................................................................2

*Kerce v. West Telemarking Corp.*
   575 F.Supp.2d 1354 (S.D. Ga. 2008) .............................................................................17

*Laurence v. Harris Teeter, LLC*,
   2018 WL 10058688 (W.D.N.C. Feb. 20, 2018) ................................................................2

*Lindberg v. UHS of Lakeside, LLC*,
   761 F. Supp. 2d 752 (W.D. Tenn. 2011) ...........................................................................2

*Long v. CPI Sec. Sys., Inc.*,
   292 F.R.D. 296 (W.D.N.C. 2013)....................................................................................20

*McNeil v. Faneuil, Inc.*,
   2016 WL 11673836 (E.D. Va. Mar. 2, 2016)..................................................................12

*Mebane v. GKN Driveline N. Am., Inc.*,
   2020 WL 6525819 (M.D.N.C. Nov. 5, 2020)..............................................................2, 22

*Mendoza v. Mo's Fisherman Exch., Inc.*,
   2016 WL 3440007 (D. Md. June 22, 2016) ................................................................20

*Mitchel v. Crosby Corp.*,
   2012 WL 4005535 (D. Md. Sept. 10, 2012) ...............................................................15

*Monroe v. FTS USA, LLC*,
   257 F.R.D. 634 (W.D. Tenn. 2009) ...........................................................................13

*Montoya v. S.C.C.P. Painting Contractors, Inc.*,
   2008 WL 554114 (D. Md. Feb. 26, 2008) ..................................................................11

*Morgan v. Fam. Dollar Stores, Inc.*,
   551 F.3d 1233 (11th Cir. 2008) ................................................................................13

*Myers v. Loomis Armored US, LLC*,
   2019 WL 3338172 (W.D.N.C. July 25, 2019) ...........................................................11

*Ouellette v. Ameridial, Inc.*
   2017 WL 2972636 (N.D. Ohio July 12, 2017) ............................................................3

*Padan v. W. Bus. Sols., LLC*
   2016 WL 304303 (D. Nev. Jan. 25, 2016) ..................................................................3

*Palma v. Metropcs Wireless, Inc.*,
   2014 WL 235478 (M.D. Fla. Jan 22, 2014) ...............................................................21

*Peterson v. Nelnet Diversified Sols., LLC*,
   2018 WL 3470604 (D. Colo. Apr. 25, 2018) ...............................................................3

*Prickett v. DeKalb County*,
   349 F.3d 1294 (11th Cir. 2003) ..................................................................................3

*Regan v. City of Charleston, S.C.*,
   2014 WL 3530135 (D.S.C. July 16, 2014) ................................................................11

*Rehberg v. Flowers Foods, Inc.*,
   2013 WL 1190290 (W.D.N.C. Mar. 22, 2013) ..........................................................23

*Reynolds v. Fid. Investments Institutional Operations Co., Inc.*,
   2020 WL 91874 (M.D.N.C. Jan. 8, 2020) ...................................................................3

*Robinson v. Empire Equity Grp., Inc.*,
   2009 WL 4018560 (D. Md. Nov. 18, 2009) ..............................................................15

*Romero v. Montaire Farms, Inc.*,
   796 F. Supp. 2d 700 (E.D.N.C. 2011) .......................................................................16

*Russell v. Illinois Bell Tel. Co.*
   575 F. Supp. 2d 930 (N.D. Ill. 2008) .......................................................................................3

*Seldomridge v. Fifth Third Bank,*
   2019 WL 3842403 (S.D. Ohio Aug. 15, 2019) ........................................................................3

*Serbay v. Dialogdirect, Inc.*
   2017 WL 163866 (E.D. Mich. Jan. 17, 2017) .........................................................................3

*Shabazz v. Asurion Ins. Serv.*
   2008 WL 1730318 (M.D. Tenn. Apr. 10, 2008).......................................................................3

*Sharer v. Tandberg, Inc.,*
   2007 WL 676220 (E.D. Va. Feb. 27, 2007).............................................................................14

*Sheffield v. BB&T Corp.*
   2017 WL 1831091 (E.D.N.C. May 4, 2017) ......................................................................3, 15

*Sherrill v. Sutherland Glob. Servs., Inc.*
   487 F. Supp. 2d 344 (W.D.N.Y. 2007)......................................................................................3

*Spencer v. Macado's, Inc.,*
   2019 WL 4739691 (W.D. Va. Sept. 27, 2019) .......................................................................22

*Stephenson v. DLP Enterprises, Inc.,*
   2016 WL 3693745 (E.D. Va. Feb. 26, 2016)..........................................................................14

*Vasto v. Credico (USA) LLC,*
   2016 WL 2658172 (S.D.N.Y. May 26, 2016) .........................................................................22

*Ware v. T-Mobile USA*
   828 F. Supp. 2d 948 (M.D. Tenn. 2011)...................................................................................3

*Yerby v. City of Richmond, Virginia,*
   2020 WL 602268 (E.D. Va. Feb. 7, 2020)........................................................................13, 15

**Statutes**

29 U.S.C. § 201 .................................................................................................................................1

29 U.S.C. § 256 (b)...........................................................................................................................2

47 U.S.C. § 227 ...............................................................................................................................21

**Rules**

Fed. R. Civ. P. 20............................................................................................................................14

Fed. R. Civ. P. 23............................................................................................................................11

Fed. R. Civ. P. 42......................................................................................................................14

## I.  <u>INTRODUCTION</u>[1]

Named Plaintiffs Carl Nelson and Khari Porter ("Named Plaintiffs") have brought this suit on behalf of themselves and other similarly situated Flagger, Crew Chiefs, or similar positions ("Plaintiffs") who have worked for Defendants Area Wide Protective, Inc.; and W.E.K. Enterprises, LLC, formerly known as RoadTek Traffic Solutions LLC (collectively "Defendants"), seeking to recover unpaid wages, including for pre- and/or post-shift work, travel time, automatically deducted thirty (30) minute lunch breaks that Plaintiffs work through, and proper overtime compensation for all hours worked in excess for forty (40) per week. Plaintiffs who make up the proposed collective performed similar duties and were subject to the same unlawful policies and practices implemented by Defendants in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Specifically, Plaintiffs (1) performed unpaid pre- and post-shift work; (2) were required to work through lunch breaks but were subject to Defendants' automatic thirty-minute lunch break deduction, despite regularly working through "breaks;" (3) performed unpaid travel time to and from Defendants' facilities; and (4) did not receive properly-calculated overtime compensation for all hours worked in excess of 40 per week. Accordingly, Named Plaintiffs seek conditional certification of a collective action pursuant to Section 216(b) of the FLSA to provide timely notice to the following group of individuals:

> All individuals who were, are, or will be employed by Defendants in Virginia as Flaggers, Crew Chiefs, or other similar positions who were not compensated for all of their hours worked, including, but not limited to, above forty (40) per week, and/or who were not paid overtime compensation at the proper overtime rate, within three (3) years prior to the commencement of this action, through the date of judgment or final disposition in this action.

---

[1] In support of Plaintiffs' Motion for Conditional Certification, Plaintiffs submit the Declaration of Named Plaintiff Carl Nelson ("Nelson Decl."), attached hereto as Exhibit A; the Declaration of Named Plaintiff Khari Porter ("Porter Decl."), attached hereto as Exhibit B; Plaintiffs' proposed Judicial Notice, attached hereto as Exhibit C; Plaintiffs' proposed opt-in form, attached hereto as Exhibit D; and Plaintiffs' proposed Reminder Notice, attached hereto as Exhibit E.

This Court should grant Named Plaintiffs' motion for conditional certification and allow opt-in notice to issue because, as set out below, Named Plaintiffs have met their burden of making a modest factual showing that Defendants use a common policy of requiring employees to perform unpaid pre- and/or post-shift work, unpaid travel time, automatically deducting time spent performing compensable work, failing to compensate employees for all hours worked, and improperly calculating employees' overtime compensation; all of which results in unpaid wages and overtime violations. *See Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821, 825 (D. Md. 2012) (conditionally certifying a class of employees who were subjected to an automatic thirty-minute deduction for a purported meal break when the employees were required to work during and/or through their unpaid meal break in order to meet the demands of their employment).[2]

In light of the identified group of similarly situated employees with meritorious claims against Defendants, Named Plaintiffs request the Court issue notice of this action as quickly as possible, since the filing of the complaint does not toll the statute of limitations for FLSA "opt-in" plaintiffs. *See* 29 U.S.C. § 256 (b). "[P]rospective plaintiffs under FLSA must expressly consent

---

[2] Courts within the Fourth Circuit and across the country routinely authorize notice to employees in collective actions seeking unpaid compensation for unpaid regular and overtime wages. *See, e.g., Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 760 (W.D. Tenn. 2011) (granting conditional certification and authorizing notice where the plaintiffs made a modest factual showing that defendant utilized an auto-deduction policy that disregarded whether employees were in fact taking meal breaks); *see also Alfaro Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.*, 2015 WL 5703569 (E.D.N.C. Sept. 28, 2015) (granting class certification to employees who, were not fully compensated); *see Earls v. Forga Contracting, Inc.*, 2020 WL 1516813, at *2 (W.D.N.C. Mar. 30, 2020) (same); *see also Laurence v. Harris Teeter, LLC*, 2018 WL 10058688, at *3 (W.D.N.C. Feb. 20, 2018) (same); *Mebane v. GKN Driveline N. Am., Inc.*, 2020 WL 6525819, at *2 (M.D.N.C. Nov. 5, 2020) (same); *see also Cantu v. Milberger Landscaping, Inc.*, 2014 WL 1413500 (W.D. Tex. Apr. 3, 2014) (granting notice to class for unpaid overtime wages for work performed prior to and after working at a job site); *Hathaway v. Shawn Jones Masonry*, 2012 WL 1252569 (W.D. Ky. Apr. 13, 2012) (approving notice to class for unpaid travel and waiting time from warehouse to job site); *Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242 (W.D. Mich. 2011) (granting notice to class after finding that, even though employees were paid for travel time, such time was not a factor for overtime calculations).

to join the class," *Prickett v. DeKalb County*, 349 F.3d 1294, 1296 (11th Cir. 2003), and the statute

of limitations will continue to run for putative plaintiffs until they opt into the case. Notice is

therefore essential to enabling putative plaintiffs to assert their rights under the FLSA and, as the

Supreme Court has noted, the issuance of early notice helps the court manage the case, allowing it

to "ascertain the contours of the action at the outset*." Hoffman-LaRoche, Inc. v. Sperling,* 493 U.S.

165, 172-73 (1989).[3]

## II.    FACTUAL BACKGROUND

### A.    Named Plaintiffs and Members of the Proposed Collective Perform the Same Duties and Work the Same/Similar Hours.

Plaintiffs, as Flaggers, Crew Chiefs, and similar positions, are responsible for servicing

Defendants' clients' traffic control, flagging operations, and portable port-a-johns needs. *See* Dkt.

1, ¶¶ 24-25, 38; Nelson Decl., ¶ 3; Porter Decl., ¶ 3. Specifically, Plaintiffs' duties include, but are

---

[3] Additionally, courts in the Fourth Circuit and around the country have routinely granted conditional certification to employees bringing FLSA claims for unpaid start-up or pre- and/or post-shift activities. *See, e.g., Reynolds v. Fid. Investments Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 WL 91874, at *2 (M.D.N.C. Jan. 8, 2020); *Seldomridge v. Fifth Third Bank*, No. 1:18-CV-553, 2019 WL 3842403, at *4 (S.D. Ohio Aug. 15, 2019); *Peterson v. Nelnet Diversified Sols., LLC*, No. 17-CV-01064-NYW, 2018 WL 3470604, at *6-9 (D. Colo. Apr. 25, 2018); *Campbell v. City of New York*, No. 16-CV-08719 (AJN), 2017 WL 3206332, at *7 (S.D.N.Y. July 25, 2017); *Sheffield v. BB&T Corp.*, 2017 WL 1831091 (E.D.N.C. May 4, 2017) ; *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181 (D. Minn. 2007); *Gaffers v. Kelly Servs., Inc.*, 203 F. Supp. 3d 829 (E.D. Mich. 2016); *Ware v. T-Mobile USA*, 828 F. Supp. 2d 948 (M.D. Tenn. 2011); *Fisher v. Michigan Bell Tel. Co.*, 665 F. Supp. 2d 819 (E.D. Mich. 2009); *Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930 (N.D. Ill. 2008); *Sherrill v. Sutherland Glob. Servs., Inc.*, 487 F. Supp. 2d 344 (W.D.N.Y. 2007); *Clarke v. Convergys Customer Mgmt. Grp., Inc.*, 370 F. Supp. 2d 601 (S.D. Tex. 2005); *Beasely v. GC Servs. LP*, 270 F.R.D. 442 (E.D. Mo. 2010); *Bishop v. AT & T Corp.*, 256 F.R.D. 503 (W.D. Pa. 2009); *Ouellette v. Ameridial, Inc.*, 2017 WL 2972636 (N.D. Ohio July 12, 2017); *Benson v. Asurion Corp.*, 2010 WL 4922704 (M.D. Tenn. Nov. 29, 2010); *Byard v. Verizon W. Virginia, Inc.*, 287 F.R.D. 365 (N.D.W. Va. 2012); *Padan v. W. Bus. Sols., LLC*, 2016 WL 304303 (D. Nev. Jan. 25, 2016); *Serbay v. Dialogdirect, Inc.*, 2017 WL 163866 (E.D. Mich. Jan. 17, 2017); *Faust v. Comcast Cable Commc'ns Mgmt., LLC*, 2011 WL 5244421 (D. Md. Nov. 1, 2011); *Shabazz v. Asurion Ins. Serv.*, 2008 WL 1730318 (M.D. Tenn. Apr. 10, 2008).

not limited to, safely and appropriately setting up work-zones in accordance with state or local Department of Transportation and Safety policies and procedures; reading, understanding and following safety policies and managers' instructions; placing traffic control devices, signs, and markers in compliance with work zone diagrams; maintaining safety zones while directing movement of vehicular traffic through work zones using sign, hand, and flag signals; wearing and maintaining personal protective equipment ("PPE"); ensuring Defendants' customers' workers are warned of any impending work zone violation if an incoming vehicle does not adhere to work zone; and ensuring all safety equipment, vehicles, lights, signs and company owned property is handled in a safe careful manner. *See* Dkt. 1, ¶¶ 24-25, 38; Nelson Decl., ¶ 3; Porter Decl., ¶ 3

Plaintiffs are scheduled to work approximately five to six twelve (12) hour shifts per week. *See* Dkt. 1, ¶¶ 40-41; Nelson Decl., ¶¶ 4-5; Porter Decl., ¶¶ 4-5. Typically, Plaintiffs are scheduled to work Monday, Tuesday, Wednesday, Thursday, and Friday. *See* Dkt. 1, ¶ 40; Nelson Decl., ¶ 4; Porter Decl., ¶ 4. Additionally, Plaintiffs typically work one to two Saturdays or Sundays per month. *See* Dkt. 1, ¶ 41; Nelson Decl., ¶ 5; Porter Decl., ¶ 5. Plaintiffs work on average from approximately 6:30 a.m. until 5:30 to 6:00p.m., with Defendants automatically deducting thirty (30) minutes from Plaintiffs' time, presumably for lunch breaks, which Plaintiffs frequently worth through. *See* Dkt. 1, ¶¶ 40, 54-60; Nelson Decl., ¶¶ 9-15; Porter Decl., ¶¶ 9-14.  As further discussed below, Defendants do not compensate Plaintiffs for all of the hours they spend performing work or other compensable activities for Defendants. *See* Dkt. 1, ¶¶ 42-53; Nelson Decl., ¶¶ 4-5; Porter Decl., ¶¶ 4-5

      1.    <u>Defendants Do Not Compensate Named Plaintiffs and Members of the Proposed Collective for Pre- and/or Post-Shift Work and Travel Time.</u>

Plaintiffs' days begins with arriving at Defendants' facilities at approximately 5:30am, where they then perform approximately ninety (90) minutes of unpaid pre-shift work, including:

preparing equipment, loading work trucks with equipment and water, turning in the previous day's paperwork, inspecting all vehicles and equipment, fueling vehicles, and other tasks. *See* Dkt. 1, ¶ 44; Nelson Decl., ¶ 9; Porter Decl., ¶ 9.  Plaintiffs thereafter travel in Defendants' work trucks and/or other vehicles to the first job site of the day. *See* Dkt. 1, ¶¶ 51-53; Nelson Decl., ¶¶ 14-15; Porter Decl., ¶ 14. Once Plaintiffs arrive at the first job site, Defendants' customers record on a "billing ticket," or invoice, the time that Plaintiffs arrive at the job site. *See* Dkt. 1, ¶¶ 42-43; Nelson Decl., ¶¶ 7-8; Porter Decl., ¶¶ 7-8. Defendants then use this time recorded on the first "billing ticket" as Plaintiffs' "start" time for their shift. *See* Dkt. 1, ¶¶ 42-43; Nelson Decl., ¶¶ 7-8; Porter Decl., ¶¶ 7-8. Prior to May 2021, Defendants did not require Plaintiffs to record their hours worked, and Plaintiffs' pre-shift duties and travel time was performed by Plaintiffs before the time recorded on the first "billing ticket" of the day, which Defendants used as the "start" time for Plaintiffs' shifts. *See* Dkt. 1, ¶¶ 42, 44; Nelson Decl., ¶¶ 7, 9; Porter Decl., ¶¶ 7, 9. Thus, Plaintiffs' time engaged in such pre-shift activities and travel time was not properly captured or compensated. *See* Dkt. 1, ¶¶ 42, 44; Nelson Decl., ¶¶ 7, 9; Porter Decl., ¶¶ 7, 9.

Starting in May 2021, Defendants now require Plaintiffs to record the time they arrive at Defendants' shop in the morning until they leave for the first job site on paper timesheets. *See* Dkt. 1, ¶ 43; Nelson Decl., ¶ 8; Porter Decl., ¶ 8. However, Defendants do not compensate Plaintiffs at their appropriate regular or overtime rate for this time, and instead compensate Plaintiffs at a minimum wage rate for whatever hours are reflected on these timesheets. *See* Dkt. 1, ¶ 43; Nelson Decl., ¶ 8; Porter Decl., ¶ 8. Otherwise, Defendants still do not compensate Plaintiffs for their post-shift work, and still use the "billing tickets" to determine "start" and "end" times for Plaintiffs' shift, which does not account for travel time. *See* Dkt. 1, ¶ 43; Nelson Decl., ¶ 8; Porter Decl., ¶ 8.

Furthermore, while Defendants do provide Crew Chiefs with some compensation for travel time, notably at a minimum wage rate, Defendants do not compensate Crew Chiefs for *all* of their travel time because Defendants do not compensate Crew Chiefs for the actual time spent traveling by Crew Chiefs, but rather pay Crew Chiefs for the approximate time that is reflected in a GPS search using Google Maps. *See* Dkt. 1, ¶¶ 49, 51-53; Nelson Decl., ¶¶ 14-15; Porter Decl., ¶ 14. This method does not account for factors which could increase travel time from the time quoted by Google Maps, such as traffic, streetlights, inclement weather, and other factors. *See* Dkt. 1, ¶¶ 49, 51-53; Nelson Decl., ¶¶ 14-15; Porter Decl., ¶ 14. Thus, all Plaintiffs, including Crew Chiefs, are not compensated for the total time they spend traveling. *See* Dkt. 1, ¶¶ 49, 51-53; Nelson Decl., ¶¶ 14-15; Porter Decl., ¶ 14.

Once Plaintiffs complete their work at various job sites for the day, they have the last of Defendants' clients for the day record the end time on the last "billing ticket," which Defendants use as Plaintiffs' "end" time for their shift. *See* Dkt. 1, ¶ 45; Nelson Decl., ¶ 10; Porter Decl., ¶ 10. Plaintiffs then engage in approximately ninety (90) minutes of post-shift activities, including: picking up cones, cleaning up road flares, picking up signage, traveling back to Defendants' facilities, unloading equipment from work trucks, inspecting equipment and vehicles for damage, and numerous other tasks to properly wind down Plaintiffs' shifts. *See* Dkt. 1, ¶ 45; Nelson Decl., ¶ 10; Porter Decl., ¶ 10. Because these duties must be performed after the time that is recorded on the last "billing ticket" of the day, Plaintiffs' time engaged in such post-shift activities and travel time are not properly captured or compensated. *See* Dkt. 1, ¶ 45; Nelson Decl., ¶ 10; Porter Decl., ¶ 10. Plaintiffs do not leave work until 5:30 to 6:00pm every night, and some nights work until approximately 9:00pm. *See* Dkt. 1, ¶ 40; Nelson Decl., ¶ 4; Porter Decl., ¶ 4.

2.    <u>Despite Defendants' Awareness That Plaintiffs Are Frequently Not Able to Take a Lunch Break, Defendants Still Automatically Deduct Thirty (30) Minutes Each Day from Plaintiffs' Time for Lunch Breaks.</u>

Defendants automatically deduct thirty (30) minutes from Plaintiffs' time each day, stating it is for Plaintiffs' lunch breaks. *See* Dkt. 1, ¶¶ 54-60; Nelson Decl., ¶¶ 15-20; Porter Decl., ¶¶ 15-20. While Plaintiffs are told they will receive a thirty-minute lunch break each workday, Plaintiffs are frequently unable to take a bona fide break during their shift. *See* Dkt. 1, ¶¶ 54-60; Nelson Decl., ¶¶ 15-20; Porter Decl., ¶¶ 15-20.  Specifically, Plaintiffs are often not able to leave their job sites to take a lunch break for a variety of reasons. *See* Dkt. 1, ¶ 57; Nelson Decl., ¶ 19; Porter Decl., ¶ 16. For instance, Plaintiffs are often on job sites where they have to control the flow of traffic around construction sites. *See* Dkt. 1, ¶ 57; Nelson Decl., ¶ 19; Porter Decl., ¶ 16. These construction sites have numerous hazards, such as holes in the ground, which require the constant presence of Plaintiffs to direct traffic around the hazards. *See* Dkt. 1, ¶ 57; Nelson Decl., ¶ 19; Porter Decl., ¶ 16. Thus, Plaintiffs are unable to take any break whatsoever until such hazards are neutralized. *See* Dkt. 1, ¶ 57; Nelson Decl., ¶ 19; Porter Decl., ¶ 16. Moreover, Defendants, through their managers and complaints by Plaintiffs, have been made aware of instances when Plaintiffs are not able to take a lunch break. *See* Dkt. 1, ¶¶ 58-59; Nelson Decl., ¶ 20; Porter Decl., ¶¶ 17-18. Unaffected by Plaintiffs' complaints and concerns, management has not credited back the time for these automatically deducted lunch breaks, despite Plaintiffs informing management that they are not able to take lunch breaks. *See* Dkt. 1, ¶¶ 58-59; Nelson Decl., ¶¶ 20-21; Porter Decl., ¶¶ 17-19.  Accordingly, Plaintiffs, on average, are unable to take a thirty (30) minute meal break four to five days out of the week, in order to meet Defendants' work demands. *See* Dkt. 1, ¶ 60; Nelson Decl., ¶ 22; Porter Decl., ¶ 20.

**B.**    **Named Plaintiffs and Members of the Proposed Collective Were Subject to the Same Unlawful Timekeeping and Compensation Policies of Defendants.**

Plaintiffs are full-time hourly, non-exempt employees. *See* Dkt. 1, ¶¶ 39-40; Nelson Decl., ¶¶ 1-6; Porter Decl., ¶¶ 1-6. In order to track hours worked by Plaintiffs, Defendants have utilized two timekeeping systems. *See* Dkt. 1, ¶¶ 42-43; Nelson Decl., ¶¶ 7-8; Porter Decl., ¶¶ 7-8. First, prior to May 2021, Defendants did not require Plaintiffs to record their hours worked. *See* Dkt. 1, ¶ 42; Nelson Decl., ¶ 7; Porter Decl., ¶ 7. Instead, Defendants determined Plaintiffs' hours worked by taking the time recorded on the first and last "billing tickets" of each day, which are invoices generated for Defendants' clients. *See* Dkt. 1, ¶ 42; Nelson Decl., ¶ 7; Porter Decl., ¶ 7. Defendant would use the time shown on the first billing ticket of the day as Plaintiffs' "start" time and would use the time shown on the last billing ticket of the day as Plaintiffs' "end" time. *See* Dkt. 1, ¶ 42; Nelson Decl., ¶ 7; Porter Decl., ¶ 7.

Second, starting in May 2021, Defendants now require Plaintiffs to record the time they arrive at Defendants' shop in the morning until they leave for the first job site on paper timesheets. *See* Dkt. 1, ¶ 43; Nelson Decl., ¶ 8; Porter Decl., ¶ 8. However, Defendants do not compensate Plaintiffs at their appropriate regular or overtime rate for this time, and instead compensate Plaintiffs at a minimum wage rate for whatever hours are reflected on these timesheets. *See* Dkt. 1, ¶ 43; Nelson Decl., ¶ 8; Porter Decl., ¶ 8. Otherwise, Defendants still do not compensate Plaintiffs for their post-shift work, and still use the "billing tickets" to determine "start" and "end" times for Plaintiffs' shifts. *See* Dkt. 1, ¶ 43; Nelson Decl., ¶ 8; Porter Decl., ¶ 8. Thus, Named Plaintiffs and members of the proposed collective are all similarly affected by Defendants' policy and/or practice of not compensating them for all hours worked, including, but not limited to, pre- and/or post-shift work and travel time; and for not compensating Plaintiffs at the appropriate regular or overtime rates for their hours worked.

8

Additionally, Plaintiffs do not clock in or clock out for lunch while working. *See* Dkt. 1, ¶¶ 42-43; Nelson Decl., ¶¶ 7-8; Porter Decl., ¶¶ 7-8. Instead, Defendants automatically deduct thirty (30) minutes of time from Plaintiffs' time, whether Plaintiffs actually take a lunch break or not. *See* Dkt. 1, ¶¶ 54-60; Nelson Decl., ¶¶ 16-22; Porter Decl., ¶¶ 15-20. Ultimately, though, it does not matter if Plaintiffs would be able to document a thirty-minute lunch break or a one-minute lunch break, as managers instruct Plaintiffs that thirty (30) minutes will be deducted from each shift, regardless of whether Plaintiffs actually take a lunch break and record the start and stop times of the actual break. *See* Dkt. 1, ¶¶ 58-59; Nelson Decl., ¶¶ 20-21; Porter Decl., ¶¶ 17-19.  In fact, Defendants ignore Plaintiffs' complaints and concerns when they are not able to take lunch breaks and instead apply a uniform thirty-minute deduction to all days or shifts. *See* Dkt. 1, ¶¶ 58-59; Nelson Decl., ¶¶ 20-21; Porter Decl., ¶¶ 17-19.

Accordingly, though Defendants have been on notice of instances when Plaintiffs are not able to or have not taken lunch breaks, Defendants continue to ignore these concerns and to automatically deduct thirty (30) minutes from Plaintiffs' time each day. *See* Dkt. 1, ¶¶ 58-59; Nelson Decl., ¶¶ 20-21; Porter Decl., ¶¶ 17-19. As a result, Plaintiffs are not paid properly for all hours worked, including straight time or time and one-half for hours worked over forty (40) per week.

Finally, Defendants do not properly compensate Plaintiffs for their overtime hours worked, even for the undercounted overtime hours that Defendants themselves list on Plaintiffs' earnings statements. *See* Dkt. 1, ¶¶ 61-62; Nelson Decl., ¶ 23; Porter Decl., ¶ 21. Such overtime hours are undercounted because of the aforementioned pre-and/or post-shift work performed, travel time, and automatically deducted lunch breaks, which Defendants do not capture nor compensate Plaintiffs for. *See* Dkt. 1, ¶¶ 61-62; Nelson Decl., ¶ 23; Porter Decl., ¶ 21. Plaintiffs are not properly

compensated at the appropriate overtime rate even for these undercounted overtime hours because Defendants list "OT" line items on Plaintiffs' earnings statements with a certain amount of "hours" on the line item, but do not compensate Plaintiffs for this time. *See* Dkt. 1, ¶¶ 61-62; Nelson Decl., ¶ 23; Porter Decl., ¶ 21. Moreover, any payments that are made to Plaintiffs under the "OT" line items in Plaintiffs' earnings statements do not accurately match the proper overtime compensation and proper overtime rate that Plaintiffs are entitled to. *See* Dkt. 1, ¶¶ 61-62; Nelson Decl., ¶ 23; Porter Decl., ¶ 21.

## III.   <u>ARGUMENT</u>

### A.   <u>The Standard for Conditional Certification</u>

Named Plaintiffs seek conditional certification and Court-facilitated notice in this collective action for unpaid overtime under the FLSA, 29 U.S.C. § 216 (b). The FLSA expressly authorizes employees to pursue their claims collectively:

> [a]n action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216 (b). This collective action procedure allows for efficient adjudication of similar claims, so "similarly situated" employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute their claims. *See Hoffmann-La Roche Inc.*, 493 U.S. at 170.

Three important features define an FLSA "collective action" under section 216 (b). First, to participate in a collective action, an employee must affirmatively "opt-in," and a written consent to join the suit must be filed with the court. *Id*. at 168.   Second, the statute of limitations continues to run on each employee's claim until the individual files an opt-in form. *See Calderon v. Geico*

*Gen. Ins. Co.*, No. RWT 10CV1958, 2011 WL 98197, at *7 (D. Md. Jan. 12, 2011) ("Because the statute of limitations period continues to run with respect to each potential plaintiff's collective action claim until that plaintiff files the written [opt-in] consent form, court-facilitated notice is crucial"); *see also Montoya v. S.C.C.P. Painting Contractors, Inc.*, No. CIV. CCB-07-455, 2008 WL 554114, at *4 (D. Md. Feb. 26, 2008). Third, to serve the "broad remedial purpose" of the FLSA, courts can order notice to other potential similarly situated employees to inform them of this opportunity to "opt-in" to the case. *See Regan v. City of Charleston, S.C.*, No. 2:13-CV-3046-PMD, 2014 WL 3530135, at *2 (D.S.C. July 16, 2014); *Montoya*, 2008 WL 554114, at *2 (same).

     1.     <u>A Lenient Standard Is Applied for Conditional Certification and Court-Facilitated Notice in FLSA Collective Actions.</u>

Under the FLSA, an employee may pursue a collective action on behalf of himself and other employees similarly situated. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). However, employees must give consent to join the action filed on their behalf in order to pursue claims as part of a collective action. 29 U.S.C. § 216 (b). Therefore, instead of the typical "opt-out" process in Rule 23 actions, employees seeking relief through FLSA collective actions must affirmatively "opt-in" to join a lawsuit. *See generally Hoffman-La Roche Inc.*, 493 U.S. 165 (1989). The standard for conditional certification is fairly lenient and requires nothing "more than substantial allegations that the putative class members were together victims of a single decision, policy or plan." *Andreana v. Virginia Beach City Pub. Sch.*, No. 2:17-CV-574, 2018 WL 2144151, at *2 (E.D. Va. May 9, 2018) (internal quotations omitted); *see also Myers v. Loomis Armored US, LLC,* 2019 WL 3338172, at *3 (W.D.N.C. July 25, 2019) (finding "the lenient standard is appropriate" and noting "the majority of courts in the Fourth Circuit adhere to the two-stage inquiry contemplated by § 216(b)).

Courts in the Fourth Circuit use a two-stage procedure for certification of collective actions. *See Gagliastre v. Capt. George's Seafood Rest., LP*, No. 2:17CV379, 2018 WL 9848232, at *3 (E.D. Va. Mar. 13, 2018). At the first stage, known as conditional certification, "[t]he court's charge is to examine whether plaintiffs raise a similar legal issue as to coverage, exemption, or nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions, but their situations need not be identical." *Id.* This assessment takes place before discovery. *Id.* at *2. Because the court and the parties have minimal evidence at this point in the proceedings, the conditional certification determination is made using a lenient standard. *Id.*

Necessarily, the merits of the case are not evaluated at the conditional certification stage, nor does the court make determinations regarding the credibility of particular affiants. *See McNeil v. Faneuil, Inc.*, No. 4:15CV81, 2016 WL 11673836, at *3 (E.D. Va. Mar. 2, 2016) ("Additionally, district courts need not engage in resolving factual disputes, decide substantive issues going to the merits of the case, or make credibility determinations during the notice stage." (internal quotations omitted)); *see also Andreana*, 2018 WL 2144151, at *3; *Hart v. Barbeque Integrated, Inc.*, 299 F. Supp. 3d 762, 771 (D.S.C. 2017); *Beasley v. Custom Commc'ns, Inc.*, 2016 WL 5468255, at *5 (E.D.N.C. Sept. 28, 2016). The plaintiff's evidence must tend to show that there exists a common policy, scheme, or plan that violates the FLSA, but it need not demonstrate conclusively whether a class of similarly situated plaintiffs exists. *See Edwards v. Optima Health Plan*, No. 2:20CV192 (RCY), 2021 WL 1174724, at *5 (E.D. Va. Mar. 29, 2021) ("Plaintiffs' burden at this stage is to put forward minimal evidence that the Plaintiffs and putative class members are "similarly situated" with respect to legal and factual circumstances, and primarily that there exists a common policy or scheme that violated the FLSA."). Ultimately, "all factual questions and issues of

credibility must be resolved in favor of the moving party in a motion for conditional certification." *Monroe v. FTS USA, LLC*, 257 F.R.D. 634, 638-39 (W.D. Tenn. 2009); *see also Yerby v. City of Richmond, Virginia*, No. 3:19-CV-393, 2020 WL 602268, at *4 (E.D. Va. Feb. 7, 2020) ("The issue of credibility is not well-suited for resolution at the notice stage of the proceeding because the record is only lightly developed.").

If the court finds that the plaintiff and potential class members are "similarly situated," then the class is conditionally certified and notice of the action is sent to potential class members. *Edwards*, 2021 WL 1174724, at *3. After receiving notice, putative class members may opt-in, and the action proceeds throughout discovery as a representative action for those who opt-in. *See id.* at *8.

The second stage, referred to as the "decertification phase," is triggered by an employer's motion for decertification, usually after discovery has been concluded and when the matter is ready for trial. *Yerby*, 2020 WL 602268, at *6 ("To the extent that further discovery reveals that any additional opt-in plaintiffs are too dissimilar, or that they are otherwise not similarly situated, [the defendant] may move to decertify the class following the close of discovery."). At the decertification stage, the court examines the evidence produced during discovery and revisits its factual determination as to whether the claimants are similarly situated. *See id.* If the claimants are similarly situated, the district court allows the representative action to proceed to trial. *See id.*

In light of this two-tiered framework, "[t]he key to starting the motors of a collective action is a showing that there is a similarly situated group of employees." *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008). Courts have emphasized that the "similarly situated" requirement is modest. *Esedebe v. Circle 2, Inc.*, No. 3:20-CV-8-HEH, 2021 WL 232595, at *5 (E.D. Va. Jan. 22, 2021) ("Generally, plaintiffs are required to make a modest factual showing

sufficient to demonstrate that they and potential plaintiffs were victims of a common policy or plan that violated the law." (internal quotations omitted)); *Stephenson v. DLP Enterprises, Inc.*, No. 2:14CV485, 2016 WL 3693745, at *4 (E.D. Va. Feb. 26, 2016) ("On this Motion for Conditional Certification, Plaintiffs need only make a modest factual showing that is sufficient to demonstrate that they and potential class members together were victims of a common policy or plan that violated the law."). In order to demonstrate that a group of similarly situated employees exists, a plaintiff must only show that her position is similar—not identical—to the positions held by the putative class members. *See Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012). "The similarly situated requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996) (some quotation marks omitted).

Ultimately, the Court's determination at the notice stage "is made using a lenient standard, and typically results in conditional certification of a representative class." *Sharer v. Tandberg, Inc.*, No. 1:06CV626 (JCC), 2007 WL 676220, at *2 (E.D. Va. Feb. 27, 2007) (internal quotations omitted).

**B.**    **Named Plaintiffs Have Amply Met Their Burden of Production and Made a Modest Factual Showing that a Group of Similarly Situated Individuals Exist.**

Importantly, Named Plaintiffs are not required to show that all Flaggers, Crew Chiefs, and similar positions they seek to represent are identically situated: "[d]ifferences as to time actually worked, wages actually due and hours involved are, of course, not significant to this [similarly situated] determination." *Davis v. BT Americas Inc.*, No. 2:16-CV-206, 2016 WL 7131981, at *2 (E.D. Va. Nov. 9, 2016) (internal quotations omitted), report and recommendation adopted, No.

2:16CV206, 2016 WL 7131499 (E.D. Va. Dec. 6, 2016); *see also Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 886 (D. Md. 2011) ("'Similarly situated' need not mean 'identical.'").

Putative plaintiffs may be considered similarly situated when the purported disadvantage related to coverage, exemption, or nonpayment of minimum wages or overtime arises from similar job requirements and pay provisions. *Calderon*, 2011 WL 98197, at *4. Courts have found that employees may still be deemed similarly situated in instances where there were distinctions in their job titles, functions, pay, skill-level, efficiency, timed worked, scheduling preferences, and other factors. *See Yerby*, 2020 WL 602268, at *6; *Robinson v. Empire Equity Grp., Inc.*, No. CIV. WDQ-09-1603, 2009 WL 4018560, at *3 (D. Md. Nov. 18, 2009). Moreover, a group of potential FLSA plaintiffs is "similarly situated" if its members can "demonstrate that they . . . were victims of a common policy or plan that violated the law." *Esedebe*, 2021 WL 232595, at *5.

In fact, courts have routinely granted conditional certification to employees bringing FLSA claims based on an employer's common practice of failing to properly document and compensate all hours worked, including pre- and/or post-shift work and overtime hours at the premium overtime rate. *See, e.g., Esedebe*, 2021 WL 232595, at *2 (conditionally certifying a class of manager who were paid by the hour and had their timesheets altered by their employer so the employer could avoid paying overtime); *Sheffield*, 2017 WL 1831091, at *2 (granting conditional class certification based on plaintiffs' detailing the employer's policies that required employees to report to workstation prior to the start of the shift in order to be work-ready); *Mitchel v. Crosby Corp.*, No. CIV.A. DKC 10-2349, 2012 WL 4005535, at *6 (D. Md. Sept. 10, 2012) (granting conditional class certification after declarants detailed how they were unlawfully paid under the same wage policy); *Diaz v. Quality Crab Co.*, No. 2:10-CV-15-H, 2011 WL 4498939, at *2

(E.D.N.C. Sept. 27, 2011) (granting conditional certification based on plaintiffs affirming in their declarations that defendants used a common policy not to pay overtime hours).

For example, in *Romero v. Montaire Farms, Inc*., a case involving chicken processing plant employees who alleged that they were not properly compensated for time spent in pre- and post-shift activities such as donning, doffing, cleaning and sanitizing protective equipment, the court granted the plaintiff's motion for conditional certification as to all processing line employees paid on a "line time" or "gang time" basis. *See* 796 F. Supp. 2d 700, 707 (E.D.N.C. 2011).  Similarly, in *Burch v. Qwest Commc'ns Int'l, Inc.*, a case involving a call center requiring off-the-clock work, the court conditionally certified a class of employees in nineteen states, finding that although the company used various methods of recording overtime, the same system of recording time applied to them all. *See* 500 F. Supp. 2d 1181, 1190 (D. Minn. 2007).

Furthermore, the court in *Essame v. SSC Laurel Operating Co. LLC*, an instructive case involving healthcare workers who were required to work through lunch breaks but were subjected to a similar auto-deduction policy of thirty minutes, granted plaintiff's motion for conditional certification, explaining that "[t]he crux of the matter is whether Plaintiffs have made a modest factual showing that they were victims of a common policy or scheme that contravenes the FLSA" and finding that where the plaintiff had provided some evidence the employer maintained a practice of "making employees work through their unpaid meal break," the plaintiffs had made this modest factual showing. *See* 847 F. Supp. 2d 821, 826 (D. Md. 2012). Likewise, in *Holmes v. Charleston Ret. Inv'rs, LLC*, the court found conditional certification of the identified class was warranted where the employer maintained a uniform policy that deducted a full 30-minutes for lunch breaks from Plaintiffs' pay, when they knew Plaintiffs were unable to take and continued working through lunch breaks. *See* 115 F. Supp. 3d 653, 659 (D.S.C. 2014).

16

Conditional certification is likewise appropriate here, where Named Plaintiffs have established Defendants apply the same common pay policies to all employees, regardless of job title, duties, location, or pay rate. *See supra* Sections II.A-B. Named Plaintiffs and putative plaintiffs are uniformly required to perform pre- and/or post-shift work and travel time, are not compensated for this time, and are not properly compensated for their overtime hours worked. Additionally, despite Defendants' failure to properly record Plaintiffs' time worked, and Plaintiffs' complaints regarding working through lunch breaks, Defendants continue to deduct a full thirty minutes from each of Plaintiffs' shifts to avoid compensating Plaintiffs for such work. *See* Dkt. 1, ¶¶ 54-60; Nelson Decl., ¶ 16-22; Porter Decl., ¶ 15-20. In effect, Defendants maintain a systemic practice of automatically deducting thirty (30) minutes from Plaintiffs' shifts for unpaid "lunch breaks," regardless of whether such break took place, and that policy uniformly disadvantaged Named Plaintiffs and putative plaintiffs, who did not receive compensation for all straight-time and overtime hours worked. *See* Dkt. 1, ¶¶ 54-60; Nelson Decl., ¶¶ 16-22; Porter Decl., ¶¶ 15-20. The policies and practices challenged do not vary based on Plaintiffs' geographic location within Virginia.

As stated above, because discovery has not yet taken place, the inquiry at the conditional certification stage is typically based on pleadings and affidavits. *See Kerce v. West Telemarking Corp.*, 575 F.Supp.2d 1354, 1358 (S.D. Ga. 2008) ("Where a plaintiff has demonstrated a reasonable basis for the allegations of the complaint by filing declarations and consents from class members, a collective action is authorized, and notice should be issued."); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 362 (M.D. Ala. 1999) ("This burden [of showing similarly situated employees exist], which is not heavy, may be met by detailed allegations supported by affidavits."). In this case Named Plaintiffs have submitted declarations, both of whom work for

17

Defendants in Virginia, demonstrating that Named Plaintiffs and other Flaggers, Crew Chiefs, or similar positions, had similar job duties, faced similar requirements, and had the same pay structure.  *See* Nelson Decl., ¶¶ 26-27; Porter Decl., ¶¶ 24-25. At this stage, this evidence satisfies Named Plaintiffs' burden of showing a common policy, scheme, or plan in violation of the FLSA, and affecting all Flaggers, Crew Chiefs, or similar positions.

       **C.**     **The Proposed Notice to Potential Opt-Ins Is Appropriate.**

Congress' purpose in authorizing § 216(b) collective actions was to avoid multiple lawsuits where numerous employees have been harmed by a common violation of the FLSA. *See Hoffman-La Roche*, 493 U.S. at 170 (describing benefits of collective action under the Age Discrimination in Employment Act). As the Supreme Court has noted, "[t]hese benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* Court-authorized notice also prevents "misleading communication." *Id.* at 172.

       1.     <u>Named Plaintiffs' Proposed Judicial Notice Is Accurate and Informative.</u>

Attached to the instant filing, is Plaintiff's proposed judicial notice, Exhibit C, and Plaintiff's proposed opt-in form, Exhibit D.  The proposed notice describes the lawsuit, informs all individuals who have worked as Flaggers, Crew Chiefs, or similar positions, for Defendants of their opportunity to "opt-in," instructs them how to "opt-in," and notifies them of the effect of their decision to "opt-in."  *See* Ex. C.  The proposed notice therefore achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action and should be adopted.

       2.     <u>A Production of a List of Putative Class Members Is Necessary to Facilitate Notice.</u>

As discussed above, all putative plaintiffs who Defendants employed since August 04,

2018 are "similarly situated" employees for FLSA purposes. *See generally* Sections III.B-C. Accordingly, disclosure of their identity to Named Plaintiffs is necessary to provide these potential plaintiffs with notice of the action. *See Hoffmann-La Roche*, 493 U.S. at 170; *see also Calderon*, 2011 WL 98197, at *9 (ordering production of list in electronic and importable format within fourteen days). Named Plaintiffs therefore requests that Defendants be ordered to produce the following within fifteen (15) days of the Court's Order: a list, in electronic, importable and native format (i.e., an Excel Spreadsheet is produced in its native Excel format), of all employees whom Defendants employed since August 04, 2018, including their name, job title, last known mailing address, home and cell phone numbers, business and home email addresses, dates of employment, location of employment, last four digits of their Social Security Number, and date of birth. *See Esedebe*, 2021 WL 232595, at *6 (approving requested production of putative plaintiffs' "job titles, mailing addresses, email addresses, telephone numbers, and the last four digits of their Social Security numbers").

Courts in the Fourth Circuit have established that plaintiffs must "establish [] a need for this type of information before it may be turned over [] . . . the return of the notice may establish such a need." *See Byard*, 287 F.R.D. at 376. Here, the vast majority of employees who worked for Defendants during the relevant period may have moved since their employment with Defendants and thus further information is needed to locate them for delivery of notice. It is not uncommon for this Court to grant this information to plaintiffs. *See Hargrove v. Ryla Teleservices, Inc.*, No. 2:11CV344, 2012 WL 489216, at *9 (E.D. Va. Jan. 3, 2012), report and recommendation adopted, No. 2:11CV344, 2012 WL 463442 (E.D. Va. Feb. 13, 2012) (requiring production of names, last known addresses, telephone numbers, employment dates, employment locations, last

19

four digits of social security numbers, and dates of birth for potential opt-in plaintiffs); *see also Esedebe*, 2021 WL 232595, at *6.

        3.   <u>Named Plaintiffs Should Be Able to Send Employees the Proposed Notice Via Email and/or Text Message, in Addition to Regular Mail, and Defendants Should Be Required to Post the Notice at Putative Plaintiffs' Places of Employment and Enclose the Notice in Putative Plaintiffs' Paystubs.</u>

Finally, Named Plaintiffs propose that the notices and opt-in consent forms be sent via First Class Mail, e-mail, and text message to all current and former employees who have worked for Defendants in Virginia within the past three years, and that the potential opt-in plaintiffs who desire to participate in this lawsuit be provided ninety (90) days from the date of mailing in which to file their consent forms. This time period is consistent with established practice under the FLSA. *See, e.g., Hoffman-LaRoche*, 493 U.S. at 169; *Butler*, 876 F. Supp. 2d at 575 ("Notice periods may vary, but numerous courts around the country have authorized ninety-day opt-in periods for collective actions.") (citations omitted); *Mendoza v. Mo's Fisherman Exch., Inc.*, 2016 WL 3440007, at *20 (D. Md. June 22, 2016) ("[d]efendants have not provided a persuasive basis to deviate from the standard 90-day notice period."); *Alequin v. Darden Restaurants, Inc.*, 2013 WL 3939373, at *8 (S.D. Fla. July 12, 2013) ("Common practice provides an opt-in period of ninety days from the date of notice."). Additionally, the three-year notice period is appropriate at this stage, since Named Plaintiffs have alleged that Defendants willfully violated the FLSA. *See* Dkt. 1, ¶¶ 79, 90, 109; *Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296, 305 (W.D.N.C. 2013) (certifying a class of employees over a three-year period based on plaintiffs' allegation of a willful FLSA violation); *Bobbitt v. Broadband Interactive, Inc.*, 2012 WL 1898636, at *7 (M.D. Fla. May 23, 2012) ("[p]laintiffs have alleged in their amended complaint that BBI willfully violated the FLSA. At this early stage of the proceedings, the [c]ourt concludes that [p]laintiffs' allegation is sufficient to support their request for a three-year period in the [c]ourt-authorized notice.").

Courts have routinely authorized the issuance of notice by e-mail. *See, e.g., Butler,* 876 F.Supp. 2d at 575 ("with regard to the use of email to notify potential plaintiffs of this litigation, communication through email is now the norm"); *Clark*, 2018 WL 1626305, at *5 ("courts have routinely approved requests for home addresses and email addresses"); *Palma v. Metropcs Wireless, Inc.*, 2014 WL 235478, at *2 (M.D. Fla. Jan 22, 2014) ("A number of courts have determined that email is an inexpensive and appropriate means of delivering notice of an action to a class."); *Calder v. GGC-Baltimore, LLC*, 2013 WL 3441178, at *4 (D. Md. July 8, 2013) ("[d]efendants shall, within 14 days of the entry of this [m]emorandum and [o]rder, provide to plaintiffs' counsel the full legal name, last known residential address, and last known e-mail address of all [p]utative [c]lass members."); *Alderoty v. Maxim Healthcare Servs., Inc.*, 2015 WL 5675527, at *14 (D. Md. Sept. 23, 2015) ("[I]n order to facilitate the timely transmission of the [n]otice, the [c]ourt will require [defendant] to produce the [n]otice [r]ecipients' names, mailing addresses, and e-mail addresses.").

A number of courts in recent years have recognized that notice by text message is an appropriate and effective way of informing employees of their right to opt into a case under the FLSA and have approved such notice.[4] *See, e.g., Gagliastre*, 2018 WL 9848232, at *5 ("Plaintiffs submitted the following modes of communication to properly notify similarly situated members of the class . . . a text message notification . . . . [t]he Court finds that all of the aforementioned forms of communication are appropriate for the FLSA conditional class certification.); *see also Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) ("The

---

[4] Notice by text message and email does not violate federal consumer protection law, as Named and putative Plaintiffs provided Defendants their phone numbers for purposes of receiving communications related to their employment and notice of this lawsuit would provide putative Plaintiffs important information regarding the alleged unpaid wage claims asserted in this lawsuit against their employer. *See* Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

request that notice be distributed via direct mail, email and text messaging appears eminently reasonable to the [c]ourt. Indeed, this has become a much more mobile society, with one's email address and cell phone number serving as the most consistent and reliable method of communication. Political candidates now routinely seek out their supporters' cell phone numbers and email addresses because traditional methods of communication via regular mail and land line telephone numbers quickly become obsolete."); *see also Vasto v. Credico (USA) LLC*, 2016 WL 2658172, at *16 (S.D.N.Y. May 26, 2016). To overcome the limited amount of characters permitted in a single text message, courts have also authorized the sending of notice via a link to a website that provides putative plaintiffs access to the notice and opt-in form. *See Mebane*, 2020 WL 6525819, at *3 (finding a link to a website is an appropriate measure to address the character limits of a standard text message).

Finally, in addition to mailing, emailing, and texting the notice to putative class members, Named Plaintiffs seeks to require Defendants to post the notice in a conspicuous location at any place of employment where the putative class members work, and also to enclose the notice in putative class members' paystubs. As this Court, other courts in the Fourth Circuit, and numerous other courts around the nation have recognized, both of these methods are reasonable and measured means to supplement delivery of notice by other means. *See, e.g.*, *Spencer v. Macado's, Inc.*, No. 6:18-CV-00005, 2019 WL 4739691, at *5 (W.D. Va. Sept. 27, 2019) (requiring the defendant-employer to post judicial notice "at all [of defendant's] locations [and] enclose such notices in paystubs"); *Gagliastre*, 2018 WL 9848232, at *5 ("Plaintiffs requested that the Court approve posting flyers of the lawsuit at each of Defendants' four locations as another form of notice . . . . The Court finds that all of the aforementioned forms of communication are appropriate for the FLSA conditional class certification."); *see also Diaz*, 2011 WL 4498939, at *3 (granting posting

of notice, in both English and Spanish, at the class members' place of employment); *Rehberg v. Flowers Foods, Inc.*, No. 3:12CV596, 2013 WL 1190290, at *3 (W.D.N.C. Mar. 22, 2013) (ordering defendants to post notice to prospective class members at each of its warehouses); *Enriquez v. Cherry Hill Mkt. Corp.*, No. 10-CV-5616 FB ALC, 2012 WL 440691, at *5 (E.D.N.Y. Feb. 10, 2012) ("Posting the notice is a reasonable means of assuaging the vagaries of notice by mail, and would not unduly burden the defendants.").

## IV.  **CONCLUSION**

Named Plaintiffs have amply shown that notice is appropriate at this stage of the case. Accordingly, Named Plaintiffs respectfully requests that the Court:

1. Conditionally certify the collective under 29 U.S.C. §216 (b), defined as:

   > All individuals who were, are, or will be employed by Defendants in Virginia as Flaggers, Crew Chiefs, or other similar positions who were not compensated for all of their hours worked, including, but not limited to, above forty (40) per week, and/or who were not paid overtime compensation at the proper overtime rate, within three (3) years prior to the commencement of this action, through the date of judgment or final disposition in this action.

2. Approve the Form of the Notice, Opt-in Form, and Reminder Notice, attached hereto as Exhibits C, D, and E, respectively;

3. Order Defendants, within 15 days of the Court's Order, to provide Plaintiffs' counsel with the names, job titles, last known mailing addresses, home and cell phone numbers, business and home email addresses, dates of employment, locations of employment, last four digits of Social Security Numbers, and dates of birth for all members of the collective;

4. Authorize Plaintiffs' counsel to distribute the Notice and Opt-in Form via first class mail, email, and/or text message to all members of the conditionally certified collective, with a reminder mailing to be sent 45 days after the initial mailing to all non-responding members; and

5.  Order Defendants to post the Notice in a conspicuous location at any place of employment where members of the conditionally certified collective work, and to enclose said Notice in collective members' paystubs.

Respectfully submitted this August 5, 2021,

/s/ *Gregg Greenberg*
Gregg C. Greenberg
Virginia State Bar No. 79610
ZIPIN, AMSTER & GREENBERG, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Telephone:     (301) 587-9373
Facsimile:      (240) 839-9142
E-Mail: ggreenberg@zagfirm.com


/s/ *Francisco Mundaca*
Francisco Mundaca
Virginia State Bar No. 96073
Robert W.T. Tucci
*Pro Hac Vice admission pending*
North Carolina State Bar No. 55014
THE SPIGGLE LAW FIRM, PLLC
4830A 31st St., S., Suite A
Arlington, Virginia 22206
Telephone:     (202) 449-8527
Facsimile:      (202) 517-9179
E-Mail: fmundaca@spigglelaw.com
             rtucci@spigglelaw.com


*Counsel for Named Plaintiffs, Carl Nelson,*
*Khari Porter, and all others similarly situated*

On August 5, 2021, I served ☐ *the original* ☒ *a true copy* of the foregoing document entitled:

- **MEMO   P+A   ISO   MOTION   FOR   CONDITIONAL   CLASS CERTIFICATION**

on all the appearing and/or interested parties in this action as follows:

Area Wide Protective, Inc.                    Brandon S. Edwards
c/o Corporation Service Company               Agent for Service of Process
Agent for Service of Process                  W.E.K. Enterprises, LLC
100 Shockoe Slip, Fl 2                        5874 N. Lee Highway, Suite 1
Richmond, VA, 23219                           Fairfield, Virginia 24435

☐ **(BY MAIL)** I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Arlington, Virginia in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☐ **(BY OVERNIGHT MAIL)** I am personally and readily familiar with the business practice of Spiggle Law Firm, PLLC for collection and processing correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by the USPS for overnight delivery.

☐ **(BY ELECTRONIC TRANSMISSION)** I caused said document(s) to be served via electronic transmission through either the Court's CM/ECF system, via electronic mail, or an electronic service provider to the addressee(s) listed above on the date below.

☐ **(BY PERSONAL SERVICE)** I delivered the foregoing document by hand delivery to the addressed named above.

☒ **(BY PROCESS SERVER)** I delivered the foregoing document to a process server to effectuate process via personal service. Once a proof of service is received from the process server, our office will file the proof of service reflecting the date of personal service by the process server.

I declare under penalty of perjury under the laws of the Commonwealth of Virginia that the foregoing is true and correct.

Executed on August 5, 2021, at Arlington, Virginia.


_/s/ Robert Tucci_
Robert Tucci