UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| CARL NELSON and KHARI PORTER, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>AREA WIDE PROTECTIVE, INC.; and W.E.K. ENTERPRISES, LLC, formerly known as ROADTEK TRAFFIC SOLUTIONS LLC,<br><br>          Defendants. | Civil Action No. 1:21-CV-895-AJT-MSN |

**DEFENDANT AREA WIDE PROTECTIVE, INC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION**

Defendant Area Wide Protective, Inc. ("AWP"), through counsel, submits its response in opposition to Plaintiffs' motion to conditionally certify this case as a collective action under the Fair Labor Standards Act ("FLSA") and to issue Court-authorized notice to the putative class. (ECF No. 6.)

The Court should deny or defer consideration of Plaintiffs' motion for two independent reasons. First, "whether the named plaintiffs must arbitrate their claims should be decided well before the [conditional certification] issue is reached." *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 377 (5th Cir. 2016) (citation omitted). Both Named Plaintiffs in this lawsuit signed arbitration agreements when AWP hired them, and AWP has moved to compel arbitration here. (*See* ECF Nos. 25, 26-1, and 26-2.) If the Court grants that motion and this case proceeds in arbitration, Plaintiffs' motion for conditional certification will be moot (and, in any event, Plaintiffs have waived their right to proceed collectively as well). Second, AWP has reached a settlement with

1

the U.S. Department of Labor regarding an investigation of its wage payment practices. The settlement class overlaps significantly with members of the putative class in this lawsuit will soon receive DOL-supervised payments that, if accepted, will waive their right to seek recovery of those wages in this lawsuit. This will affect the scope of the putative class.

If the Court proceeds to the merits of Plaintiffs' motion, it should be denied because Plaintiffs have failed to show they are similarly situated to any employees working at other AWP locations besides the Northern Virginia branch where they both work. Their declarations claiming knowledge of wage practices at other AWP locations are vague, conclusory, and reliant on hearsay. They fail to satisfy even the low burden for conditional certification.

## Background

### A.  AWP's Business and Named Plaintiffs' Job Duties

Defendant AWP provides "maintenance of traffic" ("MOT") services for its customers. (Declaration of Mandy Parker at ¶ 5, ECF No. 26-3.) This involves establishing a work zone in a specific area—typically around road construction—and performing related transportation management and temporary traffic control on streets and highways. (*Id.*) AWP's traffic control crew members, which include crew chiefs and flaggers, set up work areas and direct traffic. (*Id.* at ¶ 12.) Due to the physical nature of the work, as well as effects from the COVID-19 pandemic on the economy, turnover among its traffic control crew members has been high. (*See id.* at ¶¶ 14, 16.)

Both Named Plaintiffs, Carl Nelson and Khari Porter, worked out of AWP's Manassas, Virginia branch, which they refer to as the Northern Virginia branch in the Complaint. (*Id.* at ¶ 15.) During their employment with AWP, they did not work out of any other branch. Because the nature of their work involved meeting at the branch location at the start of the shift and then going to one or more job sites each day, both Named Plaintiffs interacted only to a very limited extent

with employees not assigned to the job sites they worked.  (*Id.*) In fact, because of precautions taken during the COVID-19 pandemic, which spans the entire length of both Named Plaintiffs' employment for AWP, Named Plaintiffs were almost always assigned to the same job sites each day they worked.  (*Id.* at ¶¶ 14-15.)  Frequently, this meant that they worked solely with each other, day in and day out, and only sometimes with another employee on their crew.  (*Id.*) Accordingly, their ability to discuss compensation, work policies, and other topics with other traffic control employees of AWP would have been quite limited.

### B. Plaintiffs are subject to arbitration agreements.

On October 29, 2020, AWP purchased the assets of Roadtek Traffic Solutions, LLC ("Roadtek").  (*Id.* at ¶ 6.)  As part of that asset purchase, AWP hired many of Roadtek's traffic control crew members.  (*Id.* at ¶ 9.) These hires included both Named Plaintiffs. (*Id.* at ¶¶ 10, 15.) As part of their onboarding process, and as precondition for their employment with AWP, Named Plaintiffs both signed identical arbitration agreements.  (*See* ECF Nos. 26-1, 26-2.) Each agreement states that the signatories "understand and agree that arbitration is the only litigation forum for resolving any Covered Claim(s), and that both of us are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration." (*Id.* at 1, § A.3 (bold emphasis omitted).) The term "Covered Claim" is defined as follows:

> any and every claim or controversy, past, present or future, whether or not arising out of or related to your application for employment, employment or termination of employment, that the Company may have against you or that you may have against the Company and/or any of its managers, supervisors or employees including, but not limited to any claim for: (a) **wages, overtime or other compensation due** . . . [and] any violation of any federal, state or other governmental law, statute, regulation or ordinance.

(*Id.* at 1-2, § A.4 (emphasis added).) The Agreements also include a class and collective action waiver as well:

3

> You and the Company agree that each of us will bring any dispute only in an individual capacity, not as a plaintiff or class member in any purported class, collective or representative proceeding. We also agree that the Arbitrator in any dispute between us may not (i) consolidate one person's claim(s) with another person's claim(s); (ii) otherwise preside over or arbitrate any form of a representative, collective or class proceeding; or (iii) participate or facilitate notification of others of potential class claims.

(*Id. & id.* at 2, § B.) AWP further submits that most, if not all, of the members of Named Plaintiffs' putative class in this case signed similar agreements. (ECF No. 26-3 at ¶ 11.)

### C. Plaintiffs' Claims

This is a wage-and-hour case which the Named Plaintiffs seek to make a putative class and collective action. Named Plaintiffs seek to represent a class of AWP employees who worked as flaggers or crew chiefs at any of AWP's locations in the Commonwealth of Virginia. (ECF No. 1 at 2.) Named Plaintiffs Nelson and Porter both work for AWP at its Northern Virginia location in Manassas, one as a crew chief, the other as a flagger. (ECF No. 7-1 at 3; ECF No. 7-2 at 3.) They claim they are owed compensation for time spent working before and after their shifts, for time spent traveling to and from job sites, and for untaken lunch breaks. (ECF No. 1 at 22.) Plaintiffs assert claims under the FLSA, the Virginia Minimum Wage Act, and the Virginia Wage Payment Act. (*Id.* at 22–28.) Thus, because all of their claims related to their wages and compensation allegedly due, this lawsuit in its entirety falls well within the scope of the parties' arbitration agreements.

### D. U.S. Department of Labor Settlement

The Wage and Hour Division of the United States Department of Labor ("DOL") began investigating AWP after its asset purchase of Roadtek. (ECF No. 26-3 at ¶ 18.) AWP and the DOL recently reached a settlement in which AWP agreed to pay back wages and liquidated damages to flaggers and crew chiefs in Virginia for unpaid wages, including overtime wages, allegedly due.

4

(*Id.*) The settlement relates to claims of unpaid wages for flaggers and crew chiefs for work allegedly performed between October 29, 2020 (the date of acquisition), through April 30, 2021, when AWP changed its pay practices in response to the audit. (*Id.* at ¶¶ 18-19.) A copy of the signed settlement is attached as **Exhibit A**. AWP anticipates the settlement checks will be issued on September 23, 2021, two days from now. (ECF No. 26-3 at ¶ 18.)

## Legal Standard

"Courts generally follow a two-stage approach when deciding whether the named plaintiffs in an FLSA action are similarly situated to other potential plaintiffs. The notice [or "conditional certification"] stage comes first; if the court makes the preliminary determination that notice should be given to potential class members, it conditionally certifies the class and potential class members can then opt-in." *Purdham v. Fairfax Cty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) (cleaned up). "After most of the discovery has taken place and the matter is ready for trial, the defendant can initiate the second stage of inquiry by moving to 'decertify' the class. At that point, the court makes a factual determination as to whether the class is truly 'similarly situated.'" *Id.* (citation omitted).

"Determining whether a collective action is the appropriate means for prosecuting an FLSA action is in the Court's discretion." *Id.* at 548 (cleaned up). But courts should not exercise their discretion to facilitate notice unless "[t]he facts and the circumstances of the case illustrate" that a class of "similarly situated" aggrieved employees exists. *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). "[W]here multiple claims can be adjudicated efficiently because they share common underlying facts and do not require substantial individualized determinations for each class member, a court should conditionally certify the proposed class." *Purdham*, 629 F. Supp. 2d at 549. "In order to make this determination, however, a court must have the benefit of

'some preliminary factual showing that a similarly situated group of potential plaintiffs exists.'" *Id.* (quoting *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 893–94 (D. Md. 1995)). Plaintiffs bear the burden of making that showing. *Id.* at 548.

## Argument

I. **Practical considerations of judicial economy militate against conditional certification at this time.**

It is "well within" a district court's discretion "to defer ruling on [Plaintiffs'] conditional certification request until a later stage of the case." *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 60 (1st Cir. 2013). The Court should do so here for two independent reasons. First, AWP has moved to compel arbitration with respect to both Named Plaintiffs, who signed arbitration agreements when they applied for positions at AWP. (*See* ECF No. 25.) If that motion is granted, this case against AWP will proceed to arbitration, thereby mooting Plaintiffs' motion for conditional certification.[1] Second, AWP's settlement with the DOL will significantly modify the scope of the putative class of employees who may opt in to this lawsuit if conditional certification is granted because accepting payment from a settlement administered by the DOL waives an employee's right to bring a lawsuit to recover such wages.

A. **The Court should defer ruling on this motion until after it rules on AWP's pending motion to compel arbitration.**

Both Named Plaintiffs signed arbitration agreements as part of the hiring process for working for AWP. The Agreements specify that the parties have agreed to arbitrate any and all claims for "wages, overtime or other compensation due . . . [and] any violation of any federal, state or other governmental law, statute, regulation or ordinance." (ECF Nos. 26-1, 26-2.) Thus, if the

---

[1] If Plaintiffs were to seek to hold AWP liable as a successor in interest for alleged wages owed prior to AWP's asset purchase of Roadtek on October 29, 2020, the entire case, including allegations against Defendant W.E.K. Enterprises, LLC, would be subject to the same arbitration agreements.

6

Court grants AWP's motion to compel arbitration, Plaintiffs' motion for conditional certification will be moot as against AWP. Beyond that, even if the Court did not compel arbitration, the Agreements also contain a class and collective action waiver in which Named Plaintiffs agreed not to proceed "as a plaintiff or class member in any purported class, collective or representative proceeding" in *any* forum. (*Id.* at 2, § B.) The Court should therefore deny the motion for conditional certification outright and enforce the parties' agreements.

This situation is not uncommon in FLSA cases. Courts faced with a plaintiff's motion for conditional certification and a defendant's motion to compel arbitration regularly adjudicate the latter first, and, if that motion is granted, deny the former as moot. *See, e.g.*, *Westbrook v. JAG Indus. Servs., Inc.*, No. 3:14-CV-2080-M, 2015 WL 93447, at *6 (N.D. Tex. Jan. 7, 2015) ("Having determined that Westbrook's claim is subject to arbitration, the Court **DENIES** Plaintiff's Motion for Conditional Certification."); *Greene v. Subcontracting Concepts, L.L.C.*, No. 13 Civ. 01500(AJN), 2014 WL 1087999, at *5–6 (S.D.N.Y. Mar. 19, 2014) (granting defendants' motion to compel arbitration of plaintiff's wage claims and denying plaintiff's motion for conditional certification as a result); *Dixon v. NBC Universal Media, LLC*, 947 F. Supp. 2d 390, 405–06 (S.D.N.Y. 2013) (denying the motion for conditional certification as moot because the only named plaintiff "ha[d] agreed to arbitrate her FLSA claims, and ha[d] waived the right to bring a collective action with regard to those claims"); *see also White v. Turner*, No. H-15-1485, 2016 WL 1090107, at *3–6 (S.D. Tex. Mar. 21, 2016) (rejecting plaintiffs' argument that the court should defer consideration of arbitration agreements until after the conditional certification stage).

AWP is highly likely to succeed on the merits of its motion to compel arbitration, for the reasons explained in its memorandum of law in support of that motion. (*See* ECF No. 26.) Accordingly, in the interest of judicial economy, the Court should consider and rule on AWP's motion to

Case 1:21-cv-00895-AJT-IDD   Document 27   Filed 09/21/21   Page 8 of 18 PageID# 237

compel arbitration before Plaintiffs' conditional certification motion.

### B. The Court should defer ruling on this motion until after AWP's settlement with the DOL has concluded.

Plaintiffs argue that granting conditional certification early will allow the Court to "ascertain[ ] the contours of th[is] action at the outset." *Hoffmann-La Roche*, 493 U.S. at 172; (*see* ECF No. 7 at 11). While that may be true in some FLSA cases, it is not here because the "contours" of this action and the putative class will change in the coming weeks. Specifically, AWP has reached a settlement with the DOL regarding its investigation of AWP's pay practices. Many members of the putative class will accept payment and thereby waive their right to opt into this lawsuit. It would waste the parties' and the Court's resources to send notices to individuals who cannot opt in. The Court should either deny the motion for conditional certification or defer ruling on it until after putative class members have had the opportunity to accept a settlement payment from the DOL.

There are "two ways in which back wage claims under the FLSA can be settled or compromised by employees. First, under [29 U.S.C. §] 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. Second[,] when employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Manning v. N.Y. Univ.*, No. 98 CIV. 3300(NRB), 2001 WL 963982, at *13 (S.D.N.Y. Aug. 22, 2001) (cleaned up). Section 216(c) also authorizes the DOL to bring an action in federal court "to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages."

After an employer settles with the DOL, an employee's acceptance of such a payment in full "constitute[s] a waiver by such employee of any right he may have under subsection (b) of this

8

section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages." 29 U.S.C. § 216(c).

AWP has agreed to a settlement with the DOL in which it will pay both alleged unpaid wages (including those at an overtime premium) as well as an equal amount in liquidated damages to current and former AWP employees for the period October 29, 2020, the date of acquisition, through April 30, 2021, when AWP changed its pay practices. AWP anticipates these settlement checks will be issued on September 23, 2021, two days from now, and anticipates over the next several weeks most, if not all, of the checks will be cashed by the affected individuals. Upon acceptance of a DOL-supervised payment, many potential opt-in plaintiffs will waive their right to participate in this lawsuit for their FLSA claims entirely, as their employment ended by April 30, 2021. For many more, the amount of damages they may seek in this lawsuit will be reduced to the extent they were employed both prior and subsequent to April 30, 2021. Thus, the DOL settlement stands to significantly modify the putative class in this case in the weeks to come.

It would make little sense to send notices to individuals who cannot opt into this lawsuit. More importantly, it would waste the Court's and the parties' time and resources to do so. Accordingly, the Court should defer issuing a ruling on Plaintiffs' conditional certification motion until after the members of the putative class covered by the DOL settlement have had the opportunity to accept their supervised payment. Alternatively, the Court should deny Plaintiffs' motion without prejudice to refiling once the scope of the class has solidified.

## II.     Plaintiffs have submitted no evidence to show they are similarly situated to any employees working at AWP's other locations in Virginia.

If the Court chooses to consider the merits of Plaintiffs' motion, it should be denied. Plaintiffs both work at the same AWP location and have not shown that they are similarly situated to

9

employees working at any other AWP location in Virginia. As a result, any putative class of potential opt-in plaintiffs should be limited to flaggers and crew chiefs working out of AWP's Northern Virginia location during the time periods specified in the complaint. This class is not numerous enough to justify certifying a collective action under the FLSA.

Plaintiffs allege that AWP owns and operates at least seven branches in Virginia. (ECF No. 1 at 9–10.) But both Named Plaintiffs work for AWP at its Northern Virginia branch in Manassas. (*Id.* at 10.) Most of the allegations in Nelson's and Porter's declarations are identical to each other. (*Compare* ECF No. 7-1 *with* ECF No. 7-2.) This includes their brief, conclusory allegations regarding "Common Policies":

> From personally speaking with, observing, and working alongside other employees, including Flaggers and Crew Chiefs, I know that most, if not all, other employees are also required to perform unpaid pre- and/or post-shift work, perform unpaid travel time, work through (30) minute automatically deducted lunch breaks, are not paid proper overtime, and have not been paid the "retro pay" Defendants listed on our earnings statements.
>
> [ ]   Defendant's policies injured me and the other employees, including Flaggers and Crew Chiefs, in the same way: we were not paid for our pre- and/or post-shift work, travel time, automatically deducted lunch breaks that we worked through, properly paid our overtime, or paid for the "retro pay" Defendants listed on our earnings statements. We are all victims of these policies.

(ECF No. 7-1 at 8–9; ECF No. 7-2 at 7–8.) These two paragraphs are the full extent of Plaintiffs' support for their contention that the policies that allegedly affected them also apply to employees at other AWP locations in Virginia. Plaintiffs assert in their brief that "[t]he policies and practices challenged do not vary based on Plaintiffs' geographic location within Virginia." (ECF No. at 25.) But they offer zero support for that claim—not even a citation to their declarations. (*See id.*)

Courts "often restrict the scope of a proposed collective [action] or deny conditional certification because of a failure to identify other co-workers by name and title, provide the specifics of conversations with those employees, or note details of other employees' working conditions

10

and hours." *Taveras v. D&J Real Est. Mgmt. II, LLC*, 324 F.R.D. 39, 45 (S.D.N.Y. 2018) (collecting cases). Courts in this circuit have applied a similar burden to Plaintiffs seeking conditional certification. In *Sodekson v. E. Coast Rest. & Nightclubs, LLC*, No. 4:15-CV-02711-RBH, 2016 WL 4613386, at *8 (D.S.C. Sept. 6, 2016), the court denied Plaintiff's motion for conditional certification where the named plaintiff did "not have any additional factual support suggesting that there is a common policy or plan among the [defendant's] several locations" other than the defendant's website showing other locations and of unsupported contentions in two declarations. Similarly, *Mackall v. Safelite Grp., Inc.*, No. CV CCB-17-2145, 2017 WL 6039717, at *4 (D. Md. Dec. 5, 2017), the court granted certification only to employees in the locations in which the plaintiffs worked because of the lack of evidence presented by the plaintiffs of a broader, common policy applicable to other locations.

 Here, "Plaintiffs' allegations are too conclusory to demonstrate that [flaggers] and [crew chiefs] at locations other than where Plaintiffs worked are or may be similarly situated." *Taveras*, 324 F.R.D. at 45. First, they "do not identify the names or job titles of any person who worked at other locations." *Id.* Second, "they provide no evidence that the [complained of pay policies] appl[y] to employees in other locations." *Id.* Third, "they do not state the specifics of any conversations with other employees." *Id.* Fourth, "they do not explain how they had the opportunity to observe the regular work schedules of employees at other locations." *Id.* Finally, they "offer no proof" that either Alex Nunnally or Quinton Garnett—two "Facility Manager[s] at the Northern Virginia branch"—were "manager[s] of employees at other locations" at the time they allegedly made statements regarding lunch breaks. *Id.*; (*see* ECF No. 7-1 at 6–7; ECF No. 7-2 at 6). For these reasons, the court in *Taveras* found the plaintiffs' "bare" declarations "insufficient to meet even the low burden of demonstrating commonality with individuals employed at other locations." 324

F.R.D. at 45. The similarly scant nature of Plaintiffs' declarations here compels the same result.

Further, with only the flaggers and crew chiefs who work at AWP's Northern Virginia location in the putative class, there would be "too few members of the proposed class" for conditional certification. *Chin v. The Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1086 (D. Minn. 2014). While collective actions are not subject to Rule 23's numerosity requirement, the number of potential opt-in plaintiffs influences whether adjudicating claims together as a collective action would be efficient. Courts have refused to grant conditional certification where there would be "no benefit to a collective action, especially in light of the limited class of members." *Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 369 (D.S.C. 2012). From May 1, 2021 through the present, there were only twenty-seven current and former AWP employees would fall within the putative class of employees who worked as flaggers or crew chiefs out of AWP's Northern Virginia office. (ECF No. 26-3 at ¶ 16.) Thus, there would be no benefit to Plaintiffs proceeding with a collective action here. The Court should deny conditional certification and allow Plaintiffs and the other few similarly situated employees to proceed individually if they wish.

### III.    Objections to Plaintiffs' Proposed Class Notice

Plaintiffs have requested that that Court issue notice to the potential class members, and they have included with their motion the proposed language to be provided in the notice. To the extent the Court finds that conditional certification is warranted, AWP objects to the proposed notice as written on the following grounds.

#### A.    Notice Fails to Fully Inform Individuals of Participation Obligations.

The notice fails to include any language that informs putative class members of the potential obligations associated with joining the lawsuit, including: producing documents; responding to written discovery requests; appearing for a deposition under oath; and being called to testify as

a witness at trial. Such language is "routinely accepted" by courts in this Circuit. *See Regan v. City of Charleston*, 2014 WL 3530135, at \*9 (D.S.C. July 16, 2014) ("As noted by the court in *Byard*, "[c]ourts routinely accept' text notifying potential plaintiffs 'of the possibility that they will be required to participate in discovery and testify at trial.'") (quoting *Byard v. Verizon West Virginia, Inc.*, 287 F.R.D. 365, 375 (N.D.W.Va. 2012)); *Clark v. Williamson*, 2018 WL 1626305, at \*8 (M.D. N.C. March 30, 2018) (requiring language that notifies potential class members of their potential discovery obligations, including depositions); *Butler v. DirectSAT USA, LLC*, 876 F.Supp.2d 560, 575 (D. Md. 2012) (modifying proposed notice to advise potential plaintiffs of possibility of having to participate in discovery process and at trial). Therefore, Section V of the notice should be amended to include a full description of the potential obligations, discovery-related and otherwise, associated with joining the lawsuit.

> **B.** **Unless Plaintiffs' Counsel is Expressly Assuming Responsibility For Possible Fed. R. Civ. P. 54(d) costs, Potential Plaintiffs Should Be Warned About Assessing Costs Against Them**

The last paragraph of Section VIII provides:

> Plaintiffs' attorneys will advance necessary costs and out-of-pocket disbursements and expenses on your behalf in this litigation. In the event that necessary costs and out-of-pocket disbursements are not approved by the Court to be reimbursed from any settlement or judgment, or paid by Defendants, you will have no obligation to reimburse Plaintiffs' attorneys for such costs.

(ECF No. 7-3 at 5.) To the extent that Plaintiffs' counsel (instead of Plaintiffs) is assuming responsibility for the payment of costs that can be assessed pursuant to Fed. R. Civ. P. 54(d), the notice should be revised to make that point explicitly clear. If Plaintiffs' counsel is suggesting that costs cannot be assessed against Plaintiffs *under any scenario*, that is plain error and the notice must be revised. *See Byard*, 287 F.R.D. 365, 375 (including a sentence in the notice that stated, "If you do not prevail in your claim, court costs and expenses may possibly be assessed against you.").

Accordingly, AWP requests that the following language be added: "Employees may be responsible for expenses and courts costs should they not prevail."

### C.  A Ninety Day Opt-In Period is Excessive

The proposed notice provides individuals ninety days to opt in to the class. This is excessive. Indeed, courts typically provide no more than sixty days for potential plaintiffs to opt in. *See Clark*, 2018 WL 1626305 *8 (applying 60-day notice period); *Byard*, 287 F.R.D. at 373 (noting "courts in this circuit routinely find that an opt-in period between 30-60 days is appropriate"); *Valerio*, 314 F.R.D. at 76 ("[A] 60 day notice period for potential plaintiffs is common practice under the FLSA"); *Hansen v. Waste Pro of South Carolina, Inc.*, 2020 WL 1892243, *7 (D.S.C. April 16, 2020) (denying plaintiff's request for 90-day opt-in period and applying 60-day period instead); *Yerby v. City of Richmond, Virginia*, 2020 WL 602268, *7 (E.D. Va. Feb. 7, 2020) (applying 60-day notice period). The discovery period in this Court is usually approximately four months, or 120 days in length. Providing individuals ninety days to opt in would prevent AWP from conducting meaningful discovery against last minute opt-in plaintiffs through written discovery requests or depositions. To permit meaningful discovery, AWP requests the opt-in period be reduced to no more than thirty days.

### D.  Contacting Plaintiffs' Counsel Should Not be Referenced

Section IX of the proposed notice reads: "Further information about the lawsuit or this notice may be obtained by contacting Plaintiffs' attorneys at the address or phone number provided above or by visiting **[WEBSITEURL]**." (ECF No. 7-3 at 5.) This language should be stricken because it invites distortions of the notice process and the litigation.

Courts have sought to protect the form and manner of the notice process to protect its integrity. For example, courts have stated that providing the notice through first class mail, rather

14

than email or text message, is preferred because it is a court-controlled "reliable process which ensures that proper notice is received by the potential class members." *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 91 (E.D. N.Y. 2007); *see also Moseman v. U.S. Bank Nat'l Assoc.*, 2018 WL 3616864, at \*2 (W.D. N.C. June 12, 2018) (holding that duplicative notice by email was "inappropriate"); *Fenley v. Wood Grp., Mustang, Inc.*, 2016 WL 1059681, at \*7 (S.D. Ohio Nov. 21, 2016) (stating that allowing repetitive notification "may unnecessarily 'stir up litigation' or improperly suggest the Court's endorsement of Plaintiff's claims"); *Kuznyetsov v. W. Penn. Allegheny Health Sys., Inc.*, 2009 WL 1515175, at \*6 (W.D. Pa. June 1, 2009) (stating that email notifications could "compromise the integrity of the notice process" due to the ease with which email can be forwarded to non-class members and posted to internet sites); *Arevalo v. D.J.'s Underground*, 2010 WL 4026112, at \*2 (D. Md. Oct. 13, 2010) (denying request to make telephone contact recognizing inherent risks of improper solicitation and intrusion into privacy)

Plaintiffs' request that putative class members be invited to call Plaintiffs' counsel with questions should be dismissed out of hand. The potential for distortion or improper communication is far too great. This simply is not a reliable, neutral means of communicating with putative class members in a way that can be adequately monitored by the Court.

### E. Reminder Notice Is Improper

AWP also objects to the use of a reminder notice to proposed class members. Courts often reject reminder notices because of the prejudicial effect that they can have. *See Moseman*, 2018 WL 3616864 at \* 2 (declining Plaintiff's request to send "additional notices or duplicative notices by email"); *Mebane v. GKN Driveline North America, Inc.*, 2020 WL 6525819, \*3 (M.D. N.C. Nov. 5, 2020) (denying request for 45-day reminder notice and stating that a reminder notice to

potential class members is inappropriate because it "take[s] on an element of harassment"); *Samuel v. Athelas Institute, Inc.*, 2019 WL 1573574 (D. Md. April 11, 2019) (no "special need" demonstrated that would warrant a reminder notice). For example, a reminder notice runs the risk of "improperly suggest[ing] the Court's endorsement of Plaintiff's claims. *See Fenley*; 170 F.Supp.3d at 1074-75 (denying plaintiff's request for a 45-day reminder notice); *see also Byard*, 287 F.R.D. at 373 (a reminder notice may inadvertently prompt recipients to believe that they are being "encouraged to join the suit").

In facilitating notice, a court must be careful to avoid any action that could be construed as tacit approval of the suit on the merits. As one court put it, "the purpose of notice is simply to inform potential class members of their rights. Once they receive that information, it is their responsibility to act as they see fit." Id. (quoting *Witteman v. Wisconsin Bell, Inc.*, 2010 WL 446033 (W.D. Wis. Feb. 2, 2010). Because the potential prejudicial effects of a reminder notice outweigh any benefit, it should not be permitted. In the alternative, to the extent that the Court concludes a reminder notice is appropriate, it should be limited to one 20-day follow-up notice via U.S. Mail.

## Conclusion

For the reasons discussed above, Plaintiffs' motion for conditional certification should be denied. Alternatively, the Court should defer ruling on the motion.

This the 21st day of September 2021.

                Respectfully submitted,

                */s/ David I. Klass*
                David I. Klass (VSB #78697)
                FISHER & PHILLIPS LLP
                227 West Trade Street, Suite 2020
                Charlotte, NC 28202
                Telephone: (704) 334-4565
                Facsimile: (704) 334-9774
                Email:  dklass@fisherphillips.com

Edward N. Boehm, Jr.
Admitted *Pro Hac Vice*
FISHER & PHILLIPS LLP
1075 Peachtree Street, NE, Suite 3500
Atlanta, GA 30309
Telephone: (404) 240-4286
Facsimile: (404) 240-4249
Email: tboehm@fisherphillips.com

Scott Matthew Zurakowski
Admitted *Pro Hac Vice*
Krugliak, Wilkins, Griffiths & Dougherty Co., LPA
PO Box 36963
Canton, Ohio 44735-6963
Telephone: (330) 497-0700
Facsimile: (330) 497-4020
Email:  szurakowski@kwgd.com

*Counsel for Defendant Area Wide Protective, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| CARL NELSON and KHARI PORTER, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>AREA WIDE PROTECTIVE, INC.; and W.E.K. ENTERPRISES, LLC, formerly known as ROADTEK TRAFFIC SOLUTIONS LLC,<br><br>    Defendants. | Civil Action No. 1:21-CV-895-AJT-MSN |

**Certificate of Service**

I hereby certify that on the date listed below, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send electronic notice to all counsel of record.

This the 21st day of September 2021.

<div style="text-align:right">

*/s/ David I. Klass*
David I. Klass (VSB #78697)
FISHER & PHILLIPS LLP
227 West Trade Street, Suite 2020
Charlotte, NC 28202
Telephone: (704) 334-4565
Facsimile: (704) 334-9774
Email:  dklass@fisherphillips.com
*Counsel for Defendant Area Wide Protective, Inc.*

</div>