## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

|  |  |
|---|---|
| CARL NELSON and KHARI PORTER, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>AREA WIDE PROTECTIVE, INC.; and W.E.K. ENTERPRISES, LLC, formerly known as ROADTEK TRAFFIC SOLUTIONS LLC,<br><br>      Defendants. | Civil Action No. 1:21-CV-895-AJT-MSN |

## DEFENDANT AREA WIDE PROTECTIVE, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION, OR, IN THE ALTERNATIVE, FOR PARTIAL DISMISSAL

In the opening brief in support of its motion to compel arbitration, Defendant Area Wide Protective, Inc. ("AWP"), argued that the arbitration agreements between it and Plaintiffs clearly and unmistakably delegated threshold questions of arbitrability to the arbitrator. (*See* D.E. 48 at 9–13.) Nothing in Plaintiffs' response brief contradicts that argument. In fact, their brief makes no mention of the delegation clause at all. Instead, Plaintiffs advance general arguments challenging the arbitration agreements in their entireties or other provisions unrelated to the delegation clauses.

But Supreme Court precedent makes clear that these exact sorts of argument must be compelled to arbitration in the presence of a delegation clause. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). Plaintiffs' argument under state law regarding ambiguity is similar to a state-law-based argument of unconscionability the Court refused to consider in *Rent-A-Center*. And their contention that AWP has "failed to satisfy the required elements for this Court to compel

arbitration under the Federal Arbitration Act *for this dispute*" entirely misses the point of a delegation clause. (D.E. 55 at 8.) The Supreme Court has explained that the purpose of a delegation clause is to assign "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or *whether their agreement covers a particular controversy*," to the arbitrator rather than the Court. *Rent-A-Ctr.*, 561 U.S. at 68–69 (2010) (emphasis added). Thus, their arguments concerning successor liability must also be decided by the arbitrator.

Like the plaintiff in *Rent-A-Center*, Plaintiffs here have not challenged the validity of their arbitration agreements' delegation clauses. This compels the same result: their claims against AWP and their general arguments against compelling arbitration must *both* be referred to the arbitrator.

## I.     The presence of a delegation clause—and Plaintiffs' decision not to challenge it— requires that the Court compel all claims against AWP to arbitration.

Here, the Federal Arbitration Act ("FAA") limits the Court's role to reviewing challenges to the delegation clause itself. And Plaintiffs have made no such challenge. Accordingly, their challenges to other aspects of their arbitration agreements must be referred the arbitrator.

"The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr.*, 561 U.S. at 67. Section 2 of the statute provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms. Like other contracts, however, they may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Ctr.*, 561 U.S. at 69 (citations and quotation marks omitted).

This is true for delegation clauses, as well. "An agreement to arbitrate a gateway issue is

simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. A delegation clause "is valid under § 2 [of the FAA] 'save upon such grounds as exist at law or in equity for the revocation of any contract,' and federal courts can enforce the agreement by staying federal litigation under § 3 and compelling arbitration under § 4." *Id.* (quoting 9 U.S.C. § 2).

The Supreme Court has distinguished between two types of challenges to an arbitration agreement. "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 444–445 (2006). But

> only the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable. That is because § 2 states that a "written provision" "to settle by arbitration a controversy" is "valid, irrevocable, and enforceable" *without mention* of the validity of the contract in which it is contained. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."

*Rent-A-Ctr.*, 561 U.S. at 70–71 (cleaned up). In other words, the Supreme Court "require[s] the basis of [the] challenge to be directed specifically to the agreement to arbitrate before the court will intervene." *Id.* at 71.

In *Rent-A-Center*, the Supreme Court applied this principle to a delegation clause. There, the employer specifically sought enforcement of an arbitration agreement's "delegation provision—the provision that gave the arbitrator 'exclusive authority to resolve any dispute relating to the enforceability of this Agreement.'" *Id.* (record citation and ellipses omitted). In this situation,

3

the Court noted that "[t]he 'remainder of the contract' is the rest of the agreement to arbitrate claims arising out of [the employee's] employment with Rent-A-Center." *Id.* (citation omitted). It "makes no difference" that "the underlying contract is itself an arbitration agreement" because "[a]pplication of the severability rule does not depend on the substance of the remainder of the contract." *Id.* at 72. Accordingly, the Court held that "unless [the employee] challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, *leaving any challenge to the validity of the Agreement as a whole for the arbitrator*." *Id.* (emphasis added). This includes the sort of challenges under state law that plaintiffs often make when resisting an arbitration clause. *See id.* at 73–74.

This case stands on all fours with *Rent-A-Center*. First, AWP, like Rent-A-Center, seeks enforcement of a delegation clause contained in an arbitration agreement, pursuant to the FAA. (*See* D.E. 48 at 9–13.) Second, Plaintiffs have challenged the arbitration agreement as a whole, but fail to rebut AWP's argument that the arbitrator must decide their challenge to the enforceability of their arbitration agreements. (*See generally* D.E. 55.) This was also the case in *Rent-A-Center*. *See* 591 U.S. at 72–75. Thus, because Plaintiffs "did not contest the validity of the delegation provision in particular," the Court "must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *See id.* at 72, 74.

One look at Plaintiffs' response brief confirms that they have not challenged the delegation clause at all. They argue that their arbitration agreements are ambiguous as a matter of Virginia law. (D.E. 55 at 13–17.) But they make no mention of the delegation clause. Thus, this argument asserts that "the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye*, 546 U.S. at 444. *Rent-A-Center* makes clear that Courts may not consider this type

of argument. 561 U.S. at 70. There, the plaintiff asserted that his arbitration agreement was proce-

durally and substantively unconscionable under Nevada law. *Id.* at 73. But the Court refused to

consider these arguments because they were not "specific to the delegation provision." *Id.* This

Court must refuse to consider Plaintiffs' general state-law arguments here for the same reason.

Next, plaintiffs argue that even if their arbitration agreements are valid under Virginia law,

their claims in this lawsuit "do[ ] not fall within the parameters of the Arbitration Agreements."

(D.E. 55 at 17.) But again, they completely fail to address the delegation clause, which assigns *this*

*exact question*—"whether the[ ] agreement covers a particular controversy"—to the arbitrator ra-

ther than the Court. *Rent-A-Center*, 561 U.S. at 69. It makes no difference that Plaintiffs rely on a

theory of successor liability; their claims based on that theory are still against AWP, a party to the

arbitration agreements, and may be compelled to arbitration in the same manner as Plaintiffs' other

claims against AWP. In sum, Plaintiffs' decision to ignore the delegation clause in their briefing

does not give it any less force here.[1]

## II.   Dismissal is an appropriate disposition after compelling arbitration of all claims against AWP.

Plaintiffs argue that if the Court compels arbitration, the FAA requires a stay rather than

dismissal. But the Fourth Circuit has explicitly held that "[n]otwithstanding the terms of § 3 [of

the FAA], dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."

*Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001). And

Plaintiffs admit that Fourth Circuit precedent exists going both ways on this issue. (D.E. 55 at 27–

---

[1] Plaintiffs also argue that "Defendant WEK is not a signatory to the agreements and has presented no viable argument for why it should be allowed to use them to compel this action to arbitration." (D.E. 55 at 20.) AWP agrees with WEK's argument that the Court should compel arbitration of Plaintiffs' claims against WEK for the reasons articulated by WEK in its briefing. Additionally, from a matter of basic judicial economy, it would make little sense to have duplicative litigation occur both in this Court against WEK and in arbitration against AWP regarding the same under-lying wage issues.

28.) Federal Rule of Civil Procedure 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Accordingly, if Plaintiffs' claims against AWP are compelled to arbitration, then AWP requests that the Court dismiss it from the case.

### III.   Plaintiffs' class and collective action waivers apply to their claims against AWP.

Plaintiffs also argue that the class and collective action waivers in their arbitration agreements apply only to arbitration and the disputes covered by the agreements. As discussed above, this is an issue for the arbitrator, not the Court, to decide. But in any event, this contradicts the plain language of the agreements. Virginia courts have long held that a contract "must [be] enforce[d] . . . according to its terms." *Hopkins v. LeCato*, 128 S.E. 55, 61 (Va. 1925). And "a court cannot alter the provisions of or add to the plain language of a contract." *First Citizens Bank & Trust Co. v. Robertson*, 86 Va. Cir. 269 (Va. Cir. Ct., Roanoke Cty. 2013). The first sentence of the waiver section provides: "You and the Company agree that each of us will bring *any* dispute only in an individual capacity, not as a plaintiff or class member in any purported class, collective or representative proceeding." (D.E. 48-1 at 3; D.E. 48-2 at 3 (emphasis added).) Use of the words "any," "dispute," and "proceeding" are intentional and meant to encompass more claims and fora than just arbitration-related ones. And use of the terms "collective or class proceeding" show that the parties intended to include "class actions" and "collective actions," as Rule 23 uses the first term to refer to representative actions and everyone, including the Supreme Court, uses the latter to refer to representative actions under the FLSA. (*Id.*); *see* Fed. R. Civ. P. 23; *Hoffmann-La Roche Inc.* v. *Sperling*, 493 U.S. 165, 169–170 (1989).

Moreover, "when considering the meaning of any part of a contract, [Virginia courts] will construe the contract as a whole." *Lansdowne Dev. Co. v. Xerox Realty Corp.*, 514 S.E.2d 157,

161 (Va. 1999). The arbitration agreements' structure supports the interpretation that the class and collective action waiver applies independently of the arbitration provisions. First, it is set off in a separate section from the rest of the provisions. (*See* D.E. 48-1 at 3; D.E. 48-2 at 3.) Second, it includes separate sentences, one addressing all disputes generally and another addressing arbitration specifically. (*Id.*) Third, the agreements contain severability clauses, providing: "If any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement, which shall remain in full force and effect." (*Id.* at 7.) So even if the arbitration provisions were unenforceable, the remainder of the contract, including the separate provision prohibiting class and collective actions, would survive.

## IV.   Plaintiffs' claims for overtime compensation should be dismissed.

In its initial memorandum, AWP argued that to the extent Plaintiffs seek recovery of alleged unpaid overtime-rate wages under state law, the Court should dismiss those claims. (D.E. 48 at 15–16.) Amendments to Va. Code Ann. § 40.1-29.2, the Overtime Wage Act, that provided a private right of action did not take effect until July 1, 2021. They do not apply retroactively. *See Va. Farm Bureau Ins. Co. v. Travelers Indem. Co.*, 408 S.E.2d 898, 901 (Va. 1991) (finding that absent retrospective legislative intent, "there is a presumption that a statute is intended to be prospective and not retrospective in operation.") (citation omitted)). Plaintiffs have no other basis to claim they are owed overtime wages under state law. Plaintiffs highlight that the Virginia Wage Payment Act was also recently amended, and those amendments took effect on July 1, 2020. But that statute, even as amended, did not authorize private litigants to sue for *overtime* wages until the amendments to the Overtime Wage Act took effect in 2021. As a case from before either statute was amended explained:

the [Virginia Wage Payment] Act does not create the right to be paid for work per-
formed; that right exists, if at all, by virtue of other legal theories, including the
common law doctrines of contract and quantum meruit . . . . The Act prescribes
the *manner* in which an employer must pay certain employees.

*Pallone v. Marshall Legacy Inst.*, 97 F. Supp. 2d 742, 745 (E.D. Va. May 24, 2000). Accordingly,

any claim under Virginia law for unpaid overtime against either defendant fails.

**V.     Conclusion**

For the reasons discussed above and in AWP's initial memorandum of law, the motion to

compel arbitration should be granted, and, in the alternative, the motion to dismiss should be

granted.

This the 8th day of November 2021.

Respectfully submitted,

*/s/ David I. Klass*_____
David I. Klass (VSB #78697)
FISHER & PHILLIPS LLP
227 West Trade Street, Suite 2020
Charlotte, NC 28202
Telephone: (704) 334-4565
Facsimile: (704) 334-9774
Email: dklass@fisherphillips.com

Edward N. Boehm, Jr.
Admitted *Pro Hac Vice*
FISHER & PHILLIPS LLP
1075 Peachtree Street, NE, Suite 3500
Atlanta, Georgia 30309
Telephone: (404) 240-4286
Facsimile: (404) 240-4249
Email: tboehm@fisherphillips.com

Scott Matthew Zurakowski
Admitted *Pro Hac Vice*
Krugliak, Wilkins, Griffiths & Dougherty Co., LPA
PO Box 36963
Canton, Ohio 44735-6963

Telephone: (330) 497-0700
Facsimile: (330) 497-4020
Email: szurakowski@kwgd.com

*Counsel for Defendant Area Wide Protective, Inc.*

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| CARL NELSON and KHARI PORTER, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civil Action No. 1:21-CV-895-AJT-MSN |
| v. | |
| AREA WIDE PROTECTIVE, INC.; and W.E.K. ENTERPRISES, LLC, formerly known as ROADTEK TRAFFIC SOLUTIONS LLC, | |
| Defendants. | |

**<u>Certificate of Service</u>**

I hereby certify that on the date listed below, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send electronic notice to all counsel of record.

This the 8th day of November 2021.

*/s/ David I. Klass*
David I. Klass (VSB #78697)
FISHER & PHILLIPS LLP
227 West Trade Street, Suite 2020
Charlotte, NC 28202
Telephone: (704) 334-4565
Facsimile: (704) 334-9774
Email: dklass@fisherphillips.com
*Counsel for Defendant Area Wide Protective, Inc.*