IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CARL NELSON, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.  ) | Civil Action No. 1:21-cv-00895 (AJT/IDD) |
| ) | |
| AREA WIDE PROTECTIVE, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## **ORDER**

Plaintiffs have filed a class action complaint for violations of the Fair Labor Standards Act and the Virginia Wage Payment Act against their employer at the time of the alleged violations, Defendant W.E.K. Enterprises, LLC ("WEK"), formerly known as RoadTek Traffic Solutions, LLC (RoadTek"), and also, under a theory of successor liability, Defendant Area Wide Protective, Inc. ("AWP"), which employed them after purchasing certain assets of RoadTek [Doc. Nos. 1, 43].[1] In response to the First Amended Complaint [Doc. No. 43] (hereinafter the "FAC"), AWP has filed a motion to compel arbitration of the claims against it based on arbitration agreements that both AWP and Plaintiffs have signed. [Doc. No. 47]. Based on those same arbitration agreements, WEK has also moved to compel arbitration of the claims against it [Doc. No. 50], even though it was not a signatory to those arbitration agreements. Both Defendants have filed, in the alternative, a motion to dismiss Count II, alleging a violation of the Virginia Wage Payment Act.

---

[1] In their original Collective and Class Action Complaint [Doc. No. 1], Plaintiffs alleged, *inter alia*, that each Defendant acted "in all respects pertinent to this action" as the agent and alter ego of each other, carried out a joint scheme, business plan or policy and the acts of each Defendant are legally attributable to the other Defendant pursuant to a Joint Employer relationship. *See id.* ¶¶ 31, 32, 33. Plaintiffs appear to have abandoned essentially all of these allegations in the FAC. *But see id.* ¶ 35.

Upon consideration of the Motions, the memoranda submitted in support thereof and in opposition thereto, the arguments of counsel presented at the hearing held on November 10, 2021, and for the reasons that follow, AWP's motion to compel arbitration is GRANTED, WEK's motion to compel arbitration is DENIED, and WEK's motion to dismiss Count II is GRANTED in part; and the case shall proceed against WEK.

## I.   FACTS

In their FAC, the named Plaintiffs, Carl Nelson and Khari Porter, allege that in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Virginia Wage Payment Act ("VWPA"), Virginia Code §§ 40.1-29, *et seq.*, WEK had a systemic, company-wide policy of failing to pay its Crew Chiefs and Flaggers for all hours worked and for overtime hours worked at the appropriate overtime rate. FAC ¶ 2. In Count I, Plaintiffs seek certification of the following class pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b):

> All individuals who were employed by Defendant WEK in Virginia as Flaggers, Crew Chiefs, or other similar positions who were not compensated for all of their hours worked, including, but not limited to, above forty (40) per week, and/or who were not paid overtime compensation at the proper overtime rate, within three (3) years prior to the commencement of this action, through October 29, 2020.

*Id.* ¶¶ 10, 14. In Count II, Plaintiffs seek class certification of the same class under Fed. R. Civ. P. 23 with respect to their alleged violations of the VWPA, Va. Code §§ 40.1-29 *et seq.*[2] *Id.* ¶ 14.

---

[2] Va. Code § 40.1-29(J) provides in pertinent part:
> [I]f an employer fails to pay wages to an employee in accordance with this section [Va. Code § 40.1-29] or § 40.1-29.2, the employee may bring an action, individually, jointly, with other aggrieved employees, or on behalf of similarly situated employees as a collective action consistent with the collective action procedures of the Fair Labor Standards Act, 29 U. S. C. § 2016 (b), against the employer in a court of competent jurisdiction to recover payment of the wages, and the court shall award the wages owed, an additional equal amount as liquidated damages, plus prejudgment interest thereon as provided in subsection G, and reasonable attorney fees and costs. If the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section or §

2

According to the FAC, in October 2020, AWP, by purchasing certain assets of RoadTek, became the corporate successor of Defendant WEK, as evidenced by (a) AWP's employing and using the same locations, managers, employees, tools, and equipment that WEK did; (b) the work services that AWP holds out for sale to the public, which are identical or nearly identical to those held out for sale by WEK; and (c) AWP's actual or constructive notice of and continued use of WEK's alleged wage and hour policies and practices. *Id.* ¶¶ 9, 66.

On October 6 and 7, 2020 respectively, while still employed by WEK, and as part of AWP's effort to transition RoadTek's employees to AWP in advance of the purchase close date, Named Plaintiffs Nelson and Porter signed an Employment Arbitration Agreement with AWP. [Doc. Nos. 48-1; 48-2; 48-3 ¶¶ 9, 10]. (Employment Arbitration Agreements of Nelson and Porter) (hereinafter "Arbitration Agreements"). The Arbitration Agreements provide that Plaintiffs and AWP:

> [A]gree that if we are not able to first resolve a "Covered Claim" (as defined below) by virtue of voluntary discussions between you and the Company, we agree to binding arbitration as the exclusive means to resolve the disputes that may arise out of or may be related to any Covered Claim(s). In this regard, you and the Company thus agree that, except as otherwise provided in this Agreement, neither of us may initiate or prosecute any lawsuit or administrative action in any way related to any Covered Claim(s). Thus, we understand and agree that **arbitration is the only litigation forum for resolving any Covered Claim(s)**, and that both of us are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration.

Arbitration Agreements at 1 § A.3 (emphasis added).

"**Covered Claims**" are defined in relevant part as follows:

"Covered Claim" means any and every claim or controversy, past, present or future, whether or not arising out of or related to your application for employment,

---

40.1-29.2, the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs.

> employment or termination of employment, that the Company may have against you or that you may have against the Company and/or any of its managers, supervisors or employees **including, but not limited to any claim for: (a) wages, overtime or other compensation due; . . . and (h) any violation of any federal, state or other governmental law, statute, regulation or ordinance**.

*Id.* at 1-2 § A.4 (emphasis added).

> **"Company"** is defined as follows:
>
> For the purposes of this Agreement, the term "Company" means AWP, Inc. and its parents, owners, **subsidiaries,** affiliates and its and their employees, officers, managers, supervisors, **agents,** benefit plans, benefit plan sponsors, fiduciaries and administrators and all successors and assigns of any of them.

*Id.* at 1-2 § A.1 (emphasis added). The Arbitration Agreements also required an employee to pursue any dispute only in an individual capacity, not as a plaintiff or class member in any purported class, collective or representative proceeding. *Id.* at 2 § B.

## II. LEGAL STANDARDS

### A. Motion to Compel Arbitration

The FAA embodies "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983). "Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citing *Hightower v. GMRI, Inc.,* 272 F.3d 239, 241 (4th Cir. 2001)). Accordingly, there is a federal policy favoring arbitration. *Id.* The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3.

In the Fourth Circuit, arbitration can be compelled when a litigant demonstrates:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the

relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [the signatory party] to arbitrate the dispute.

*In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 854 (D. Md. 2013) (*citing Whiteside v. Teltech Corp.,* 940 F.2d 99, 102 (4th Cir. 1991)).  If the moving party makes the required showing, a court must compel arbitration and stay the litigation.  *Boatright v. Aegis Def. Servs., LLC*, 938 F. Supp. 2d 602, 607 (E.D. Va. 2013) ("The FAA's stay of litigation provision is "mandatory" and a district court has "no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview.").

In determining whether the FAA requires a court to compel arbitration and stay ongoing judicial proceedings, a court must first "ask whether the parties agreed to submit their claims to arbitration."  *Green Tree Financial Corp. – Ala. v. Randolph*, 531 U.S. 79, 90 (2000).  "This is so because the first principle is that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *Gregory v. Interstate/Johnson Lane Corp.*, 1999 WL 674765, at *5 (4th Cir. 1999) (internal quotation marks and alterations omitted).  There are three related inquiries. The first is whether a particular agreement creates a duty for the parties to arbitrate, which "is undeniably an issue for judicial determination."  *Id.* In this connection, the Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate," and such provisions are referred to as delegation provisions.  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010).  A delegation provision is simply "an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."  A delegation provision is

5

valid under § 2 of the FAA "save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* at 70. Second, "when deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally should apply ordinary state-law principles that govern the formation of contracts." *Id.* (alterations omitted). Third, "if the dispute is over the very existence of the agreement to arbitrate, a district court, and not the arbitrator, must decide if the arbitration clause (indeed, the entire agreement) is enforceable against the parties." *Id.*

A non-signatory may invoke an arbitration clause under ordinary state-law principles of agency or contract, including such contract-based theories as veil-piercing, alter ego, and incorporation by reference or assumption of an agreement to arbitrate. *Long v. Silver*, 248 F.3d 309, 320 (4th Cir. 2001); *Meridian Imaging Solutions, Inc. v. OMNI Business Solutions, LLC*, 250 F. Supp 3d (E.D. Va. 2017). Courts can also apply the doctrine of equitable estoppel to allow a non-signatory of an arbitration agreement to compel arbitration with a signatory when the signatory to the agreement (1) "must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory," or (2) "raises allegations of . . . substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Weckesser v. Knight Enterprises S.E., LLC*, 228 F. Supp. 3d 561, 566 (D.S.C. 2017), *aff'd,* 735 F. App'x 816 (4th Cir. 2018) (quoting *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395–96 (4th Cir. 2005)).

A defendant bears the burden of establishing by a preponderance of the evidence the existence of a binding agreement to arbitrate. *See Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 456 (4th Cir. 2017); *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 2020 U.S. App. LEXIS 2273, 2020 WL 401804, at *4 (7th Cir.

2020). If defendant makes such a showing, plaintiff "must come forward with sufficient facts to place the entitlement to arbitration in dispute." *Lovelady v. Five Star Quality Care-Va, LLC*, No. 4:18-cv-18, 2018 U.S. Dist. LEXIS 125414, 2018 WL 3580768, at *7 (E.D. Va. July 25. 2018). The applicable legal standard is similar to that applied at summary judgment. Specifically, the pleadings and "all relevant, admissible evidence submitted by the parties" are considered and "all reasonable inferences" are drawn in favor of the non-moving party. *Meridian*, 250 F. Supp. 3d at 21 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). In deciding whether to compel arbitration, a court may consider facts outside of the pleadings. *Sucampo Pharms., Inc. v Astellas Pharma, Inc*., 471 F.3d 544, 550 (4th Cir. 2006).

### B. Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1994). A claim should be dismissed "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true . . . it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *see also Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001). In considering a motion to dismiss, "the material allegations of the complaint are taken as admitted," *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted), and the court may consider exhibits attached to the complaint, *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F. 2d 1462, 1465 (4th Cir. 1991).

Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*; *see also Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 475 (E.D. Va. 2007). In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which

require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.  Nevertheless, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating the complaint "must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face"); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  As the Supreme Court stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008), "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the conduct alleged."

### III.   DISCUSSION

#### A. Motions to Compel Arbitration

##### i. AWP's Motion to Compel

Based on the allegations of the FAC and the Arbitration Agreements, Plaintiffs' successor liability claims against AWP fall squarely within the scope of an enforceable arbitration agreement.  There is a dispute between the parties; the parties signed a written agreement that includes an arbitration provision which, by its terms, covers the dispute; the transaction, which is evidenced by the Arbitration Agreement, has a sufficient relationship to interstate or foreign commerce;[3] and the Plaintiffs have neglected or refused to arbitrate the dispute. Nevertheless, Plaintiffs contend that their Arbitration Agreements are not enforceable by AWP because they are void on their face due to overbreadth, vagueness and indefiniteness, [Doc. No. 55] at 6-10; and or, alternatively, necessarily limited to disputes between Plaintiffs and

---

[3] *See* FAC ¶¶ 23, 24, 27, 28, 30.

Defendant AWP arising out of or related to Plaintiffs' application for employment, employment, or termination of employment with AWP and therefore not applicable to Plaintiffs' successor liability claims, which they contend do not arise out of or are related to any of those three categories of claims.,*id.* at 11.

With respect to their void for vagueness challenge, Plaintiffs contend that the Arbitration Agreements are fatally ambiguous and indefinite because the Arbitration Agreements are titled "*Employment* Arbitration Agreements" and therefore "presume to cover disputes arising between Plaintiffs and Defendant AWP that might arise pursuant to Plaintiff's employment relationship with the Defendant AWP" but "the 'Covered Claims' that are required to be submitted to arbitration under the agreement are potentially indefinite." *Id.* at 8 (emphasis added); *see Westmoreland–LG & E Partners v. Virginia Power*, 254 Va. 1, 11, 486 S.E.2d 289, 294 (1997) (ambiguity arises when its language can be understood in more than one way or refers to two or more things at once). But such a reading is too strained to make it, as Plaintiffs' contend, "objectively reasonable." *See* [Doc. No. 55] at 7. The inclusion in the title of the word "Employment" simply cannot carry the weight Plaintiffs place upon it in light of the unqualified language of what constitutes a "Covered Claim." While the definition of a Covered Claim is certainly broad, *see* [Doc. No. 48-1] at 1–2 (defining "Covered Claim" as "every claim or controversy, past, present or future, whether or not arising out of or related to [Plaintiffs'] application for employment, employment or termination of employment*,* that the Company may have against you or that you may have against the Company . . ."), it also unambiguously includes all claims without qualification that Plaintiffs might assert against AWP. In fact, it is difficult to imagine how the language could be more clear.

Plaintiffs rely heavily on the pronouncements in *Fries v. Myers & Fitness Int'l, LLC*, 106 Va. Cir. 335, 2020 WL 10316474 (2020).  But unlike here, the arbitration clause in *Fries* covered "all claims or controversies *described below*, past, present, or future, whether or not arising out of or related to my application, employment, or its termination, . . ." *Fries*, at *6 (emphasis added).  And what was "described below"[4] "would plainly have been understood by the parties as a limit on the application of the [arbitration requirement in the] *Agreement* to acts which occurred during the application process, during Plaintiff's employment, or during the termination of Plaintiff's employment with the Company and thus not to include acts which occurred in the past, *i.e.*, prior to Plaintiff's application for employment; not to include acts which may occur in the future, *i.e.*, after termination of Plaintiff's employment; and not to include acts which did not arise out of or were not related to Plaintiff's application, employment, or termination." *Id.* (emphasis in original).

The Court recognizes that some claims may be so unrelated or far afield from any aspect of the employment relationship that induced the Arbitration Agreements that it would be objectively unreasonable to think that the parties would have contemplated such claims as arbitrable, such that compelling arbitration would be unconscionable.  *See, e.g., Wexler v. AT&T Corp.,* 211 F. Supp 3d 500 (E.D. N.Y. 2016) (discussing issue and collecting cases).  But

---

[4] The *Fries* Court found the following language limiting on what claims were subject to arbitration:
> I recognize that differences possibly may arise between me and Fitness International LLC including its employees, agents, officers, related companies, affiliates and all persons acting by and through them (hereinafter the "Company") during the application process or my employment with the Company[. . . .]
>
> I understand that if I do file a lawsuit regarding a dispute arising out of or relating to my candidacy for employment, employment (including its terms or compensation), or the cessation of employment, the Company may use this Agreement to request the court to dismiss the lawsuit and require me instead to use arbitration pursuant to the Federal Arbitration Act, including, but not limited to, 9 U.S.C. § 9[.]

*Id*. at 6, 7 (alterations in original).

Plaintiffs' successor liability claims do not fall into that category. While Plaintiffs' successor liability claims grow out of the work they performed for WEK before becoming an employee of AWP, those claims also directly relate to their employment with AWP, which Plaintiffs allege is a "mere continuation" of their employment with WEK.[5] Likewise, the Arbitration Agreements were entered into because of the contemplated continuation of their employment with AWP, which, again, is one of the core allegations in support of their successor liability claims.  For these reasons, Plaintiffs' successor liability claims are not unrelated to their employment with AWP, as Plaintiffs contend; and there is a fundamental tension between the Plaintiffs' position, on the one hand, that AWP is WEK's successor because of, at least in part, their employment with AWP and their position, on the other, that their employment with AWP is totally unrelated to their successor liability claims. In short, when objectively assessed, Plaintiffs' successor liability claims are within the scope of what the parties would have reasonably contemplated as arbitrable claims.  And to the extent there is any dispute whether Plaintiffs' successor liability claims are arbitrable, the parties have clearly and unmistakably delegated that issue to the arbitrator.[6]

---

[5] In fact, both Named Plaintiffs appear to view their employment with AWP as part and parcel of their employment with WEK.  In that regard, both Plaintiffs have filed the following declaration in support of their motion to conditionally certify this action as a collective action [Doc. No. 6]:
> I currently work for Defendants Area Wide Protective, Inc.; and W.E.K. Enterprises, LLC, formerly known as RoadTek Traffic Solutions LLC (collectively "Defendants"). . . .  Based on the information on my pay stubs and tax documents and other information provided throughout my employment, my understanding is that Defendants are my employers.

[Doc. Nos. 7-1, 7-2] at 1.

[6] In *Henry Schein, Inc. Archer & White Sales, Inc.,* 139 S. Ct. 524, 529 (2019), the Supreme Court recognized that the AAA rules provide that arbitrators have the power to resolve all arbitrability questions and when the parties contract to delegate the arbitrability question to an arbitrator, the court must enforce that delegation. Here, the Arbitration Agreements provide that any arbitration proceeding "shall be conducted in accordance with the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association ("AAA") in effect at the time of arbitration is initiated." [Doc. Nos. 48-1 at 3; 48-2 at 3].  Those incorporated AAA Rules provide that "the arbitrator shall have the power to rule on his or her own jurisdiction, including objections with respect to the existence, scope or validity of the arbitration agreement." AAA Employment Rules, 6(a) (a link for which was included in the Arbitration Agreements). Courts have uniformly recognized the enforceability of such

11

For the above reasons, Plaintiffs' claims against AWP are arbitrable.

### ii. WEK's Motion to Compel

Plaintiffs oppose WEK's motion to compel arbitration of their claims against it on the grounds that WEK is a non-signatory to the Arbitration Agreements and they never agreed to arbitrate their claims against it. In seeking to compel arbitration of the claims against it, WEK relies principally on the inter-relatedness of those claims and the successor liability claim against AWP.

Courts have generally refused to allow a non-signatory to enforce an arbitration agreement, even when claims are related to or co-extensive with arbitrable claims, unless there is a basis to do so under ordinary state-law principles of agency, contract, or estoppel.[7] *Long v. Silver*, 248 F.3d 309, 320 (4th Cir. 2001). Here, neither agency, contract nor estoppel principles entitles WEK to compel arbitration of Plaintiffs' claims against it. Plaintiffs and WEK never entered into an arbitration agreement and the Arbitration Agreements Plaintiffs signed with AWP do not, by their terms, apply to any claims against WEK or Roadtek. There is no evidence that any agency relationship existed between WEK and AWP when AWP entered into the Arbitration Agreements with the Plaintiffs or when WEK engaged in the conduct that allegedly violated the FLSA or VWPA; WEK is not mentioned in the Arbitration Agreements either by name or description, and cannot be deemed a third party beneficiary of those Arbitration Agreements

---

incorporated documents. *See, e.g., Preston V Ferrer*, 552 U.S. 346, 361-63 (2008); *Brenco Enters., Inc. v. Bitesquad.com, LLC,* 297 F. Supp. 3d 608, 612 (E.D. Va. 2018).

[7] Similarly, considerations of judicial efficiency, the possibility of inconsistent determinations concerning WEK's liability or an inability to reach a full and complete result in arbitration should all Defendants not participate cannot alone under the facts of this case confer on WEK the right to arbitrate claims under an arbitration agreement it never entered into with Plaintiffs. In any event, should Plaintiffs proceed against AWP in a fashion that would threaten inconsistent judgments, the Court could, upon application, consider appropriate supplemental relief with respect to the sequence of proceedings.

under Virginia contract law. *See Radosevic v. Virginia Intermont Coll.*, 651 F. Supp. 1037, 1039 (W.D. Va. 1987) (stating, under Virginia law, "the four corners of a contract evidence whether contracting parties clearly and definitely intended to directly benefit a third party" and holding that the "contract [at issue] d[id] not manifest a clear and definite intent . . . to directly benefit [a third party] . . . [where the] contract d[id] not mention [the third party in question]").

Nor is there any evidence that Plaintiffs and WEK entered into any other agreement that incorporates by reference the Arbitration Agreements. *See Meridian*, 250 F. Supp. 3d at 25. Likewise, there is currently no basis on which to conclude that Plaintiffs assumed the obligation to arbitrate their claims against WEK, or AWP was acting as the alter ego of WEK when it entered into the Arbitration Agreements. Moreover, Plaintiffs did not receive a direct benefit relative to WEK when it entered into the Arbitration Agreements with AWP, *see id.* at 25-26, and do not rely on the terms of the Arbitration Agreements in asserting its claims against WEK, *see, e.g., International Paper Co. v. Schwabedissen Maschinen &Anlagen GMBH*, 2026 F.3d 411 (2006); *American Bankers Insurance Group v. Long*, 453 F.3d 623 (4th Cir. 2006).

In any event, the claims against WEK are not so "inexorably intertwined with and dependent upon the claims brought against" AWP. *See* [Doc. No. 29] at 5 (citation omitted). While facially related, Plaintiffs' claims against WEK are distinct from those against AWP, and in no way dependent on the outcome of their claims against AWP, since they are based on conduct engaged in solely by WEK, without any allegedly concerted action on the part of AWP. Moreover, the facts necessary to establish liability on the part of WEK will not necessarily establish liability on the part of AWP, such that a resolution in Plaintiffs' favor of the claims against WEK will not resolve their claims against AWP. In that regard, the general rule in Virginia is that a company may acquire the assets of another company, as AWP did with respect

to Roadtek, without assuming responsibility for its debts and liabilities. Nevertheless, there are four exceptions to this general rule: (1) the purchasing corporation expressly or impliedly agreed to assume such liabilities, (2) the circumstances surrounding the transaction warrant a finding that there was a consolidation or de facto merger of the two corporations, (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is fraudulent in fact. *Harris v. T.I., Inc.*, 413 S.E.2d 605, 609 (Va. 1992) (collecting cases). Where successor liability is alleged pursuant to the mere continuation exception, the most critical element of a continuation is "[a] common identity of the officers, directors, and stockholders in the selling and purchasing corporations." *Id*. And when the purchase of all the assets of a corporation is a bona fide, arm's-length transaction, the "mere continuation" exception does not apply. *Id*.

As the law of successor liability reflects, the arbitration of Plaintiffs' successor liability claims, while dependent on the claims against WEK, will involve factual issues having nothing to do with the resolution of their claims against WEK; and AWP's liability to Plaintiffs, while premised on WEK's liability, will require evidence irrelevant to a determination of WEK's liability. Moreover, given the restrictions on Plaintiffs' ability to assert class wide claims, the scope of Plaintiffs' claims against AWP in arbitration would be markedly more limited than Plaintiffs' claims against WEK, were they certified as a collective action, with a corresponding difference in the scope of evidence to be presented against each Defendant.

For the above reasons, the Plaintiffs' claims against WEK are not arbitrable; and the case will proceed on Plaintiffs' claims against WEK.

### B. Motions to Dismiss

Having determined that Plaintiffs' claims against WEK are not arbitrable, the Court must now consider whether Plaintiffs have stated a claim against WEK in Count II, alleging a violation of the VWPA, Va. Code § 40.1-29 *et seq.*, for failure to pay wages for all hours worked, including overtime hours, as required under the Virginia Overtime Wage Act, § 40.1-29. 2. Am. Compl. ¶¶ 99–110.

Plaintiffs claim wages for all hours worked, including all overtime hours, for the period August 4, 2018, through October 29, 2020. WEK moves to dismiss this claim on the grounds that a private right of action for any unpaid wages under § 40.1-29(J) of the VWPA did not exist until July 1, 2020, and for overtime wages, not until July 1, 2021; and Plaintiffs' ability to recover wages in this action is limited by the effective date of those enactments. The Court agrees with this position, since the Court cannot discern any legislative intent to make retroactive either the VWPA's private right of action, effective July 1, 2020, or the amendment to § 40.1-29(J) of the VWPA, effective July 1, 2021, extending the scope of the VWPA private right of action to enforcement of the Virginia Overtime Wage Act, also effective July 1, 2021. *See City of Charlottesville v. Payne*, 856 S.E.2d 203, 211 (2021) ("The failure to express an intention to make a statute retroactive evidences a lack of intention to do so."). For these reasons, Plaintiffs' claim under Count II is limited to those wages, other than overtime wages, for the period July 1, 2020 through October 29, 2020.

### IV. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendant Area Wide Protective, Inc.'s Motion to Compel Arbitration, Or, in the Alternative, for Partial Dismissal [Doc. No. 47] be, and the same hereby is,

GRANTED; and this action is DISMISSED without prejudice as to Defendant Area Wide Protective, Inc;  and it is further

ORDERED that Defendant W.E.K. Enterprises, LLC's Motion to Dismiss Amended Complaint [Doc. No. 50] be, and the same hereby is, GRANTED in part and DENIED in part; the Motion is DENIED as to arbitration and it is GRANTED as to Count II to the extent that Plaintiffs' claim under the Virginia Wage Payment Act is limited to non-overtime wages for the period July 1, 2020, through October 29, 2020.

The Clerk is directed to forward a copy of this Order to all counsel of record.

_____
Anthony J. Trenga
United States District Judge

December 8, 2021
Alexandria, Virginia